IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| MANUEL RUESGA, Personal Representative of the Estate of ROBERT RUESGA on behalf of the ESTATE OF ROBERT RUESGA, | ) ) ) ) ) | 2 CA-CV 2006-0114 DEPARTMENT A <br><br> O P I N I O N |
| Plaintiff/Appellant, | ) ) | |
| v. | ) ) | |
| KINDRED NURSING CENTERS WEST, L.L.C., a Delaware limited liability company, dba DESERT LIFE REHABILITATION AND CARE CENTER; KINDRED HEALTHCARE OPERATING, INC., a Delaware corporation; KINDRED HEALTHCARE, INC., a Delaware corporation; and JACQUELINE LANTER, Administrator, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20050082

Honorable John E. Davis, Judge

AFFIRMED

Wilkes & McHugh, P.A.
  By Melanie L. Bossie and James M. Morgan                    Phoenix

    and

Copple, Boehm & Murphy, P.C.
  By Scott E. Boehm                                                    Phoenix
                                              Attorneys for Plaintiff/Appellant

Bowman and Brooke LLP
  By Vincent J. Montell, Curtis M. Bergen, and
  David W. Williams                                                    Phoenix
                                          Attorneys for Defendants/Appellees

_____

P E L A N D E R, Chief Judge.

¶1       Manuel Ruesga, as personal representative and on behalf of the Estate of Robert Ruesga (hereinafter "the estate"), appeals from the trial court's order granting a motion for relief from judgment, filed pursuant to Rule 60(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, by defendants/appellees Kindred Nursing Centers West, L.L.C., doing business as Desert Life Rehabilitation and Care Center; Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; and Jacqueline Lanter, Administrator (collectively, "Desert Life"). In this action, the estate alleged various claims in connection with Robert's stay at the Desert Life facility. In ultimately granting Desert Life's Rule 60(c) motion, the trial court ruled that Robert's wife, Florentine, had validly acted as Robert's agent in executing and binding him to an arbitration agreement with Desert Life, precluding a jury trial. The estate argues the trial court erred, inter alia, in finding an agency relationship between Florentine and Robert. Finding no error, we affirm.

2

## BACKGROUND

**¶2**     The pertinent background facts are essentially undisputed.  The parties agree that on November 10, 2003, Robert Ruesga was admitted to Desert Life Rehabilitation and Care Center in a severely compromised state.  He had suffered a "massive stroke," a "heart attack," had "had a feeding tube" and "a trache[o]stomy tube for breathing" inserted, and "was virtually non-responsive."  Robert was an in-patient resident at Desert Life until March 5, 2004.

**¶3**     When her husband was admitted to the facility, Florentine Ruesga was given a series of admission documents, including an arbitration agreement entitled "Alternative Dispute Resolution Agreement Between Resident and Facility" (ADR agreement).  That six-page agreement provided, inter alia,

> Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident[']s stay at the Facility including disputes regarding the interpretation of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties (including, without limitation, any claim based on violation of rights, negligence, medical malpractice, any other departure from the accepted standards of health care or safety or unpaid nursing home charges), irrespective of the basis for the duty or of the legal theories upon which the Claim is asserted, shall be submitted to alternative dispute resolution as described in the ADR Rules.

**¶4**     On its fifth page, the ADR agreement further provided:

3

By signing this Agreement, the Resident is acknowledging that he/she understands the following: (1) he/she has the right to seek legal counsel concerning this Agreement; (2) the execution of this Agreement is not a precondition of admission or to the furnishing of services to the Resident by facility, and the decision of whether to sign the Agreement is solely a matter for the Resident's determination without any influence[;] (3) nothing in this Agreement shall prevent Resident or any other person from reporting alleged violations of law to the facility, or the appropriate administrative, regulatory or law enforcement agency(s); (4) **the ADR process adopted by this Agreement contains provisions for both mediation and binding arbitration, and if the parties are unable to reach settlement informally, or through mediation, the dispute shall proceed to binding arbitration;** and (5) agreeing to the ADR process in this Agreement means that **the parties are waiving their right to a trial in court, including their right to a jury trial, their right to a trial by judge, and their right to appeal the decision of the arbitrator(s) in a court of law.**

(Emphasis in original.)

¶5 A social worker who had been employed by Desert Life when Robert was admitted averred she had "presented the [ADR] agreement to [Florentine] on November 11, 2003," and had "informed her that if she felt she had a grievance with Desert Life over the care Mr. Ruesga received, the ADR Agreement was an option for her and Mr. Ruesga." The social worker also averred that "if [Florentine] did not sign it, it would not affect whether or not Mr. Ruesga could stay at Desert Life." Florentine apparently took the ADR agreement with her that day and returned and signed it in the social worker's presence on November 17, 2003. Florentine signed the agreement on a line labeled "*Legal Representative.*" Immediately above her signature the agreement stated: "*By virtue of the*

4

*Resident's consent, instruction, durable power of attorney, or appointment as guardian, I hereby certify that I am authorized to act as Resident's agent in executing and delivering this Agreement.*" On a line below her signature, labeled "*Authority and Title*," the word "wife" was hand written. It is undisputed that at the time she executed the ADR agreement, Florentine was not acting under any power of attorney or as legal guardian for Robert, nor had Robert expressly or specifically authorized her to do so.

¶6 In January 2005, Florentine filed this action against Desert Life, "on behalf of Robert" as his "next friend," alleging claims of negligence; negligence per se for violating statutory duties; violations of A.R.S. §§ 46-454 and 46-455, portions of Arizona's Adult Protective Services Act; breach of contract; and fraud.[1] Based on the ADR agreement, Desert Life moved to dismiss the complaint and to compel arbitration. The trial court initially denied those motions, noting that Florentine "did not have a binding power of attorney for her husband and had not been appointed guardian for [him]" and concluding that "[t]he arbitration agreement [wa]s not a valid contract because it [had not been] signed by Mr. Ruesga or his authorized agent."

---

[1]Robert died on October 10, 2005, and his estate was substituted as the plaintiff. *See* A.R.S. § 14-3110 (with various exceptions, and excluding any damages for pain and suffering, every cause of action survives death of claimant and may be asserted by decedent's personal representative). The estate has not alleged that any acts or omissions of Desert Life caused Robert's death. Although the record is not clear on this point, Florentine apparently died between January and October 2005.

¶7 Subsequent discovery revealed several medical records that Desert Life presented as newly discovered evidence of an agency relationship between Robert and Florentine. Based on those documents, within six months of the trial court's ruling, Desert Life moved for relief from that ruling pursuant to Rule 60(c)(2). Following oral argument, the trial court granted Desert Life's motion and directed the parties to "arbitrate all claims in accordance with the terms of the arbitration agreement." This appeal followed.

## JURISDICTION

¶8 Without elaboration, both sides assert in their briefs that this court has appellate jurisdiction pursuant to A.R.S. § 12-2101(C) and (D). "We are not bound by [the parties' assertion,] however, because of this court's independent duty to determine whether we have jurisdiction." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, n.2, 965 P.2d 47, 50 n.2 (App. 1998); *see also Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981).

¶9 At oral argument in this court, the estate argued, and Desert Life agreed, the trial court's order compelling arbitration is appealable pursuant to A.R.S. § 12-2101(C) as a "special order made after final judgment." The estate correctly pointed out that the trial court's initial order, which denied Desert Life's motions to dismiss and compel arbitration, was appealable pursuant to A.R.S. § 12-2101.01(A)(1) and thus constituted a "judgment" pursuant to Rule 54(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 2 ("'Judgment' as used in these Rules includes a decree and an order from which an appeal lies."). Therefore, the estate further

6

argued, the trial court's subsequent order granting Desert Life's Rule 60(c) motion amounted to a "special order made after final judgment." § 12-2101(C).

¶10  That an order is statutorily appealable and qualifies as a "judgment" for purposes of Rule 54(a), however, does not necessarily make it a "final judgment" for purposes of § 12-2101. *See Prop. Investors Enters., Ltd. v. Found. for Airborne Relief, Inc.*, 115 Ariz. 52, 54, 563 P.2d 307, 309 (App. 1977) ("[The] order was not final, even though it was denominated 'judgment'"). Rather, "'[a] final judgment . . . decides and disposes of the cause on its merits, leaving no question open for judicial determination.'" *Id., quoting Decker v. City of Tucson*, 4 Ariz. App. 270, 272, 419 P.2d 400, 402 (1966); *see also Kim v. Mansoori*, 214 Ariz. 457, ¶ 6, 153 P.3d 1086, 1088 (App. 2007) (final judgment disposes of at least one claim in a multiclaim action); *Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App. 1991) (final judgment is "'an ultimate disposition of an individual claim'"), *quoting Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S. Ct. 895, 900 (1956).

¶11  The trial court's first order that denied Desert Life's motions to dismiss and to compel arbitration did not ultimately dispose of any claim on the merits or otherwise. In fact, that order did just the opposite, allowing the estate's claims to proceed in superior court rather than referring the case to arbitration. Thus, because the trial court did not enter any final judgment, we reject the parties' position that the court's later order granting Rule 60(c) relief was a special order made after final judgment for jurisdiction purposes under §

7

12-2101(C). If the legislature had intended that statute to apply to "special orders" made after any and all "judgments," it presumably would have had no reason to instead use the phrase "final judgment" in subsection (C). *See Speros v. Yu*, 207 Ariz. 153, ¶ 16, 83 P.3d 1094, 1098 (App. 2004) ("When interpreting a statute, each word or phrase must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant.").

**¶12** Additionally, the substance or effect of an order determines its character for appeal purposes. *See Prop. Investors Enters.*, 115 Ariz. at 54, 563 P.2d at 309. The trial court's order from which the estate appeals merely compelled arbitration. The legislature has not made such orders appealable. *See* A.R.S. § 12-120.21, 12-2101, 12-2101.01. To hold that the trial court's final order is appealable based on the procedural anomaly that it was entered after a previous order that had refused to refer the case to arbitration would defeat the legislature's intent in making orders compelling arbitration nonappealable. *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, ¶ 20, 977 P.2d 769, 775 (1999).

**¶13** We further note that "[a]n order denying or granting a motion to set aside a judgment under Rule 60(c) . . . is appealable as a 'special order made after final judgment.'" *M & M Auto Storage Pool, Inc. v. Chem. Waste Mgmt., Inc.*, 164 Ariz. 139, 141, 791 P.2d 665, 667 (App. 1990), *quoting* § 12-2101(C). Again, however, there has never been a final judgment entered in this case. Consequently, although the trial court's order granted Rule 60(c) relief, that fact alone does not make the order appealable under § 12-2101.

8

¶14 Similarly, any claim of jurisdiction pursuant to § 12-2101(D) is also dubious. That subsection permits an appeal "[f]rom any order affecting a substantial right made in any action when the order in effect determines the action and prevents judgment from which an appeal might be taken." At oral argument in this court, pointing to language in the ADR agreement that prevents the parties from "appeal[ing] the decision of the arbitrator(s) in a court of law," the estate argued that subsection (D) applies. But, even assuming the trial court's order granting Rule 60(c) relief "affect[s] a substantial right" and "prevents judgment from which an appeal might be taken," we fail to see how "the order in effect determines the action." § 12-2101(D). Thus, § 12-2101(D) does not provide a basis for appeal.

¶15 In essence, although it granted Rule 60(c) relief, the trial court's order ultimately compelled arbitration. And, generally, "[a]n order compelling arbitration is not a final judgment and therefore not an appealable order." 1 State Bar of Arizona, *Arizona Appellate Handbook* § 3.3.1.12.2.7, at 3-22 (4th ed. 2006); *see also Roeder v. Huish*, 105 Ariz. 508, 509-10, 467 P.2d 902, 903-04 (1970) (trial court order compelling arbitration and staying superior court proceedings pending arbitration deemed interlocutory and not appealable). On the other hand, "an order that compels arbitration, dismisses the arbitrable claims *and* includes a Rule 54(b)[, Ariz. R. Civ. P., 16 A.R.S., Pt. 2,] certification of finality is appealable." *W. Agric. Ins. Co. v. Chrysler Corp.*, 198 Ariz. 64, ¶ 8, 6 P.3d 768, 770 (App. 2000); *see also S. Cal. Edison Co.*, 194 Ariz. 47, ¶ 20, 977 P.2d at 775 (absent Rule 54(b) certification, "order compelling arbitration remains interlocutory and is not

9

appealable"); *Dusold v. Porta-John Corp.*, 167 Ariz. 358, 361, 807 P.2d 526, 529 (App. 1990). The trial court's order compelling arbitration neither dismissed any claims nor included any Rule 54(b) certification. Therefore, under the foregoing authorities, the order, without more, is interlocutory and not appealable.[2]

¶16 In sum, we find no basis to exercise subject matter jurisdiction in this case. *See Cordova v. City of Tucson*, 15 Ariz. App. 469, 470, 489 P.2d 727, 728 (1971) ("[T]he right to appeal exists only by force of statute . . . ."). In the exercise of our discretion, however, we may elect to treat an appeal as a petition for special action, despite our lack of appellate jurisdiction. *See Danielson v. Evans*, 201 Ariz. 401, ¶ 35, 36 P.3d 749, 759 (App. 2001); *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 189 Ariz. 369, 375, 943 P.2d 729, 735 (App. 1996); A.R.S. § 12-120.21(A)(4). We elect to do so here and accept special action jurisdiction because there is no "equally plain, speedy, and adequate remedy by appeal" and some of the issues raised are purely legal in nature. Ariz. R. P. Spec. Actions 1(a), 17B A.R.S.; *see Winner Enters., Ltd. v. Superior Court*, 159 Ariz. 106, 108, 765 P.2d 116, 118 (App. 1988). In addition, the delay the legislature had hoped to avoid by making orders

---

[2]We note that in *Western Agricultural Insurance Co. v. Chrysler Corp.*, 198 Ariz. 64, ¶ 8, 6 P.3d 768, 770 (App. 2000), Division One of this court determined that it had jurisdiction over an appeal from an order compelling arbitration that "did not contain Rule 54(b) certification." There, unlike in this case, the trial court ultimately "clarif[ied] . . . it had intended the order to be a final order of dismissal." *Id*. Although the trial court in *Western Agricultural* (and the trial court in this case) should have followed the mandatory stay procedure prescribed in A.R.S. § 12-1502(D), the order entered in *Western Agricultural* dismissing the entire case constituted a final, appealable judgment which, again, is lacking in this case.

compelling arbitration nonappealable already has occurred in this case. Thus, resolving the agency issue without further delay promotes judicial economy and efficient use of the parties' and the court's resources. *Cf. ChartOne Inc. v. Bernini*, 207 Ariz. 162, ¶¶ 8, 10, 83 P.3d 1103, 1107 (App. 2004) (special action review appropriate when questions of law raised and when it may avoid "unnecessary expenditure of time and money").

## DISCUSSION

### I. Agency

¶17        The estate first argues the trial court erred in granting relief because Desert Life "did not (and cannot) satisfy the . . . Rule 60(c) requirement that their new evidence would probably change the result." Rule 60(c)(2), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, allows relief from a judgment or order when the moving party produces "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." But "'[a] judgment will not be reopened if the evidence is merely cumulative and would not have changed the result.'" *Ashton v. Sierrita Mining & Ranching*, 21 Ariz. App. 303, 305, 518 P.2d 1020, 1022 (1974), *quoting* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2859 (1973). "We will not disturb the trial court's decision on a motion to set aside a judgment absent an abuse of discretion." *Tovrea v. Nolan*, 178 Ariz. 485, 490-91, 875 P.2d 144, 149-50 (App. 1993); *see also McKernan v. Dupont*, 192 Ariz. 550, ¶ 10, 968 P.2d 623, 627 (App. 1998) ("The trial court has broad discretion in determining whether to grant relief under Rule 60(c) and, absent an abuse of that discretion,

11

we will not disturb its decision."). A trial court abuses its discretion if it misapplies the law in ruling on a Rule 60(c) motion. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 329, 697 P.2d 1073, 1079 (1985).

¶18     As noted above, the trial court initially denied Desert Life's motions to dismiss and to compel arbitration, finding "[t]he arbitration agreement [wa]s not a valid contract because it [had not been] signed by Mr. Ruesga or his authorized agent." Desert Life later moved for relief from that ruling, arguing that newly discovered medical records were "cogent evidence that [Florentine] did, in fact, have the authority to bind her husband to the terms of the ADR Agreement when she signed it on his behalf, thereby giving rise to a valid and enforceable agreement to arbitrate his claims."

¶19     In support of its motion, Desert Life cited various medical records, including a 1989 Tucson Medical Center "Conditions of Admission" form signed by both Robert, who had signed as the "Patient," and Florentine, who had signed as Robert's "Agent or Legally Authorized Representative." Desert Life also produced a June 2003 document in which Robert had authorized his insurance company to disclose his protected health information to Florentine. In executing that document, Robert further authorized Florentine "to act upon and/or make changes to [his] member information," allowing her to make, inter alia, a "primary care physician change," or a "change in network." That document also stated that Robert's authorization to Florentine was "valid from always to all the time." Desert Life's proffered new evidence also included medical records from 2003 that indicated

12

Florentine had controlled Robert's care even when he was conscious and able to "follow some simple commands." In addition, several medical consent forms from July and August 2003 named Robert as the patient and were signed by Florentine as his "legally authorized representative."

¶20     Based on the newly discovered evidence, the trial court granted Desert Life's motion under Rule 60(c), finding Robert had "created an actual or apparent agency relationship that empowered his wife to act on his behalf," and therefore, she had "had the authority to bind him to the arbitration provisions." The estate argues the trial court's ruling was incorrect because the  evidence produced in support of Desert Life's Rule 60 motion did not establish that Florentine had acted as Robert's express or apparent agent in executing the ADR agreement.

¶21     Generally, "[t]he question of whether an agency existed is one of fact." *Corral v. Fid. Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App. 1981). But "[t]he question of whether an agency relationship exists is a question of law for the court when the material facts from which it is to be inferred are not in dispute." *Cote v. A.J. Bayless Markets, Inc.*, 128 Ariz. 438, 444, 626 P.2d 602, 608 (App. 1981). For the first time at oral argument in this court,[3] the estate urged that the facts bearing on actual agency

_____

[3]"Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived." *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004). But that is a procedural rule that courts do not automatically apply. *Id*. In our discretion, we address the estate's new argument because it implicates the meaning and effect of a statute, A.R.S. § 12-1502.

were in dispute, and therefore, the question of agency should have been determined by a jury. It claimed that certain "negative evidence," such as the absence of any express contract of agency, power of attorney, or guardianship undermined Desert Life's newly discovered evidence.

¶22    All the facts to which that negative evidence relates, however, are undisputed, and the estate has never questioned the existence, content, or dates of the various records on which Desert Life relies. Nonetheless, in determining the agency issue, a trier could draw different inferences from the uncontroverted facts each side presented. *See Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (weighing of evidence and "'drawing of legitimate inferences from the facts'" are generally functions for trier of fact), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). But even if that is so, we reject the estate's belated suggestion that only a jury can resolve any factual issues and determine the question of agency in this context.

¶23    The estate's assertion that Florentine had had no agency authority related directly to its argument on the ultimate question of whether the ADR agreement was binding on Robert. In other words, the estate contested any agency relationship in order to challenge the validity or enforceability of the ADR agreement. But, when a party "denies the existence of [an] agreement to arbitrate, the [superior] court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party." A.R.S. § 12-1502(A). And courts "have repeatedly analogized a trial court's duty

14

in ruling on a motion to compel arbitration to its duty in ruling on a motion for a summary judgment." *Ex parte Greenstreet, Inc.*, 806 So. 2d 1203, 1207 (Ala. 2001); *see also Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, ¶¶ 13-14, 78 P.3d 1081, 1086 (App. 2003) (trial court should hold evidentiary hearing when genuine issue of material fact exists on existence or terms of arbitration agreement, but court should apply same standard used to determine summary judgment motions in deciding whether any such hearing required); *Haynes v. Kuder*, 591 A.2d 1286, 1290 (D.C. 1991); *DeArmond v. Halliburton Energy Servs., Inc.*, 81 P.3d 573, 576 (N.M. Ct. App. 2003).

¶24        "Proceeding 'summarily' means that the court initially determines whether material issues of fact are disputed and, if such factual disputes exist, then conducts an 'expedited evidentiary hearing' to resolve the dispute." *Haynes*, 591 A.2d at 1290, *quoting Merrill Lynch Pierce Fenner & Smith v. Melamed*, 425 So. 2d 127, 128-29 (Fla. Dist. Ct. App. 1982). Further, the party claiming that there is a dispute of fact regarding arbitrability has the burden of requesting an evidentiary hearing. *See Greenstreet*, 806 So. 2d at 1207. Therefore, as the party denying the existence of a valid or enforceable arbitration agreement, the estate was required to request an evidentiary hearing if it believed that issues of fact remained. Because it failed to do so, the estate waived any right to such a hearing.[4] *See*

---

[4]For that same reason, the estate waived its argument that "the trial court at least should have deferred enforcement [of the ADR agreement] until trial or an evidentiary hearing to decide questions of fact regarding *apparent* agency" because "fact questions" remain about what Desert Life "relied upon to determine agency." (Emphasis added.)

*Brake Masters Sys.*, 206 Ariz. 360, ¶ 15, 78 P.3d at 1086 (absent request for evidentiary hearing, "any error in . . . not holding an evidentiary hearing is waived" on appeal). And, even assuming there were disputed facts regarding agency, the issue would have been "summarily" determined by the superior court, not a jury. *See* § 12-1502(A).

¶25        Accordingly, we reject the estate's contention that the issue of agency presented triable questions of fact that only a jury could determine. Rather, when, as here, no party requested a hearing and the trial court is statutorily obligated to summarily determine whether a valid ADR agreement exists, § 12-1502(A), the trial court did not err by ruling on the agency issue without having held an evidentiary hearing.

¶26        We now turn to the merits of the trial court's ruling on agency. In view of the procedural mandate in § 12-1502(A) and the absence of any request for an evidentiary hearing, the trial court was authorized to make "'[i]ncidental findings of fact,'" to which we "'accord[] the usual weight given to such findings of fact in appellate review.'" *Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 87, 907 P.2d 51, 56 (1995), *quoting Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 167, 840 P.2d 1024, 1032 (App. 1992). The court's factual finding of agency "is not clearly erroneous if substantial evidence supports it." *Brake Masters Sys.*, 206 Ariz. 360, ¶ 16, 78 P.3d at 1086.

¶27        To the extent the parties presented facts from which conflicting inferences could be drawn on the agency issue, it was for the trial court, not this court, to weigh those facts. *See In re Gen. Adjudication of Rights in Gila River Sys.*, 198 Ariz. 330, ¶ 25, 9 P.3d

16

1069, 1079 (2000). In other words, in ruling on the agency question, the trial court presumably weighed Desert Life's newly discovered evidence against the "negative evidence" on which the estate relies. We will uphold a trial court's findings "unless they are shown to be clearly erroneous." *Id*. And "we do not reweigh conflicting evidence or redetermine the preponderance of the evidence, but examine the record only to determine whether substantial evidence exists to support the trial court's action." *In re Estate of Pouser*, 193 Ariz. 574, ¶ 13, 975 P.2d 704, 709 (1999). We may affirm a trial court's grant or denial of Rule 60(c) relief "where any reasonable view of the facts and law might support the judgment of the trial court . . . even if the trial court has reached the right result for the wrong reason." *Geyler*, 144 Ariz. at 330, 697 P.2d at 1080.

¶28　　　　"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006).[5] An agency relationship can derive from either actual or apparent authority. *See id.* §§ 2.01, 2.03; *cf. Premium Cigars Int'l, Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 208 Ariz. 557, ¶ 30, 96 P.3d 555, 565 (App. 2004) ("There are two usual types of agency, express and apparent.").

---

[5]Arizona courts generally follow the Restatement of Agency, absent prior decisions to the contrary or other cogent reasons for departing from it. *See Maricopa P'ships, Inc. v. Petyak*, 163 Ariz. 624, 626, 790 P.2d 279, 281 (App. 1989).

¶29    Actual authority "may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof." *Corral*, 129 Ariz. at 326, 630 P.2d at 1058; *see also* Restatement (Third) of Agency § 2.01 cmt. b (actual authority includes both "'express authority'"—"that a principal has stated in very specific or detailed language"—and "'implied authority'"—when an agent has actual authority "to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objective and other facts known to the agent"). In contrast, apparent authority exists when "'the principal has intentionally or inadvertently induced third persons to believe that such a person was its agent although no actual or express authority was conferred on him as agent.'" *Premium Cigars*, 208 Ariz. 557, ¶ 30, 96 P.3d at 565, *quoting Curran v. Indus. Comm'n*, 156 Ariz. 434, 437, 752 P.2d 523, 526 (App. 1988).

¶30    The parties seemingly agree, as do we, that apparent authority does not apply here. Robert was "non-responsive" when he was admitted to Desert Life; therefore, on his arrival he could not have "'intentionally or inadvertently induced'" Desert Life to believe Florentine was his agent. *See id.* Further, as the estate argues, because Desert Life "did not discover [the aforementioned medical records] until long after Florentine [had] signed the arbitration agreement, . . . [the records] could not have been relied upon as the source of apparent agency." Accordingly, we agree with the parties that apparent agency does not

18

apply because neither Robert nor his medical records—discovered after the fact—could have induce reliance by Desert Life.

**¶31** We turn then to the question of whether Florentine had actual authority to bind Robert to the ADR agreement.[6] The estate argues "[t]here can be no dispute that Florentine was not Robert's express agent" because, inter alia, "there was no express contract of agency." But, as noted above, "[t]he authority of an actual agent can be either express, or implied." *Canyon State Canners, Inc. v. Hooks*, 74 Ariz. 70, 72, 243 P.2d 1023, 1024 (1952); *see also Brown v. Ariz. Dep't of Real Estate*, 181 Ariz. 320, 326, 890 P.2d 615, 621 (App. 1995) ("Agency may be proven by an express contract between the parties or by facts implying a contract."); *Cote*, 128 Ariz. at 444, 626 P.2d at 608 ("No express contract between principal and agent is required to establish an agency relationship."); Restatement (Third) Agency § 2.01, cmt. b.

**¶32** As our supreme court has noted:

The test of whether implied authority exists is well-stated in 2 C.J.S., Agency, § 23 . . . where it is said:

"The relation of agency need not depend upon express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties

---

[6]We reject the estate's argument that the trial court did not find actual authority but, rather, relied solely on "ostensible authority" in finding that Florentine had acted as Robert's "authorized agent" in executing the ADR agreement. Although the ultimate basis for its ruling is not totally clear, the trial court expressly found that Robert had "created an actual or apparent agency relationship." To the extent the court suggested Florentine "had ostensible or apparent authority to bind" Robert, we disagree.

19

and the circumstances of the particular case. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency."

*Canyon State Canners*, 74 Ariz. at 73, 243 P.2d at 1024, *quoting* 2 C.J.S. *Agency* § 23, at 1045-46.

¶33 Further, although "marital relation *alone* does not make one spouse an agent for the other," "an inter-spousal agency may be established by circumstantial as well as direct evidence." *State Farm Mut. Auto. Ins. Co. v. Long*, 16 Ariz. App. 222, 225, 492 P.2d 718, 721 (1972). In fact, "[t]he only meaningful difference between a principal-agent relation existing between spouses and that existing between non-spouses is the degree of proof required to establish and define the agency relationship." *Id*. Thus, contrary to the estate's assertion, the issue of actual authority is not resolved simply because there was no "express contract of agency."

¶34 In *Gruber v. Castleberry*, 23 Ariz. App. 322, 324, 533 P.2d 82, 84 (1975), Division One of this court found that Gruber was bound by a lease renewal for his office space that his wife had signed. Although Gruber had never expressly authorized his wife to act as his agent in carrying out the business affairs of his medical practice, his wife "paid the office bills, signed the rent checks, signed the lease and signed the renewal notice on behalf of herself and her husband." *Id*. Accordingly, the court found, "[b]y permitting his wife to conduct these business activities, Dr. Gruber impliedly authorized her to act as his agent in

20

executing the renewal notice." *Id*. In another case addressing implied spousal authority, the single fact that a wife had relied on her husband to take care of the couple's insurance matters was held to be "sufficient to create an agency relationship between her and her husband"; therefore, the court held the husband "had authority to bind [his wife]" in an insurance contract. *Torrez v. State Farm Mut. Auto. Ins. Co.*, 130 Ariz. 223, 228-29, 635 P.2d 511, 516-17 (App. 1981). Those cases support the trial court's conclusion, based on the materials Desert Life presented, that Robert had implicitly authorized Florentine to act as his agent.

¶35     Desert Life produced several medical records that revealed a history of Florentine's acting and making decisions on Robert's behalf. The records not only constituted circumstantial evidence of an agency relationship, but arguably contained an express authorization in the 1989 medical form when Robert failed to contest Florentine's signature as "Agent or Legally Authorized Representative." *See* Restatement (Third) of Agency § 1.03, cmt. b (when reasonable person would express dissent to an action, silence or "[f]ailure . . . to express dissent will be taken as a manifestation of affirmance"). Admittedly, that document was executed long before Robert's stay at Desert Life. But Desert Life also produced various documents dated immediately before his stay showing that Robert had consented to his wife's control of his care and his insurance matters. *See* ¶ 19, *supra*. Absent any contrary evidence, the records Desert Life produced reflect that Robert intended his wife to act as his agent.

¶36 Accordingly, we agree with Desert Life that "the trial court properly determined that there were sufficient facts to show that both [Robert's] actions and his wife's long history of making decisions on his behalf gave rise to an agency relationship such that [Florentine] could bind her husband to the ADR Agreement."[7] The trial court did not abuse its discretion in granting Desert Life's Rule 60(c) motion when the newly discovered facts produced in support of that motion established an agency relationship. *See Tovrea*, 178 Ariz. at 490-91, 875 P.2d at 149-50.

## II. Contract of adhesion and waiver of rights under Arizona's Elder Abuse Act

¶37 The estate also argues the trial court "erred by enforcing the arbitration agreement without determining whether it is a contract of adhesion" and in failing "to address the waiver of Robert's rights under Arizona's elder-abuse statutes." *See* A.R.S. § 46-455(H). The estate concedes it raised these issues only in opposition to Desert Life's motions to compel arbitration and to dismiss, which the trial court initially denied. Those issues were not reurged in connection with Desert Life's Rule 60(c) motion for relief from judgment, the granting of which is the sole ruling from which the estate sought to appeal and

---

[7]We note that in support of its agency argument, Desert Life points to several other medical records containing evidence that Florentine generally had controlled Robert's health care decisions. Although those documents arguably lend support to the determination that Robert had intended Florentine to act as his agent, she had statutory authority "to make health care decisions" for her spouse who "[wa]s unable to make or communicate" such decisions, even absent any agency authority. *See* A.R.S. § 36-3231(A)(1). Thus, we do not rely on those documents to determine an agency relationship.

22

that is before us now. Nonetheless, the estate argues "the trial court forgot to address them during the [Rule 60(c)] proceedings."

¶38        We first note that, although we have opted to treat this as a special action, our review on appeal is limited to the rulings specified in the notice of appeal. *See Brown v. Karas*, 73 Ariz. 62, 66, 237 P.2d 799, 801 (1951) (supreme court would "not . . . consider[]" assignment of error when "[a]n examination of the notice of appeal indicate[d] that no appeal [had been] taken from the ruling of the court" that appellant had claimed was erroneous); *see also Lee v. Lee*, 133 Ariz. 118, 124, 649 P.2d 997, 1003 (App. 1982); *cf. Hirsch v. Nat'l Van Lines, Inc.*, 136 Ariz. 304, 311, 666 P.2d 49, 56 (1983) ("The scope of an appeal from a denial of a Rule 60 motion is restricted to the questions raised by the motion to set aside . . . ."). We see no reason why that same limitation should not apply here. Accordingly, because the estate appealed only from "the Court's signed minute entry that granted defendants' Rule 60(c) motion for relief from the Court's earlier ruling," and because that ruling did not address the aforementioned issues, the estate cannot raise them now.

¶39        Further, by failing to reurge below their arguments about the validity of the ADR agreement in response to Desert Life's Rule 60(c) motion, or after the trial court granted that motion, the estate abandoned those arguments, precluding their review now. *See Aritex Land Co. v. Baker*, 14 Ariz. App. 266, 273, 482 P.2d 875, 882 (1971) ("[A]ppellants are precluded from urging a defense on appeal which they abandoned at

23

trial."). And, even assuming the estate was not required to reurge the aforementioned arguments in response to Desert Life's motion, because the trial court had no real opportunity to address them, the issues are waived on review.[8] *See Douglas v. Vancouver Plywood Co.*, 16 Ariz. App. 364, 367, 493 P.2d 531, 534 (1972) ("[A]ppellate review of a case will ordinarily be limited to the theories *tried* in the court below.") (emphasis added); *see also Winters v. Ariz. Bd. of Educ.*, 207 Ariz. 173, ¶ 13, 83 P.3d 1114, 1118 (App. 2004). Therefore, we do not further consider or address these arguments.

## DISPOSITION

**¶40**        The order of the trial court is affirmed. Because the estate is not the successful party, we deny its request for attorney fees made pursuant to A.R.S. § 12-341.01. In our discretion, we also deny Desert Life's attorney fee request. *See* § 12-341.01(A).

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge

---

[8]As noted above, the trial court denied Desert Life's motions to compel arbitration and to dismiss the complaint, finding "[t]he arbitration agreement is not a valid contract because it was not signed by Mr. Ruesga or his authorized agent." In view of that ruling, the court had no occasion to reach issues related to the substance or validity of the ADR agreement itself. And, after the trial court later granted Rule 60(c) relief and ordered the parties to arbitrate the dispute, the court was not asked to rule on previously raised issues.

_____
GARYE L. VÁSQUEZ, Judge