NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SUSAN SHOOK,
*Plaintiff/Appellee,*

v.

RENEWCARE OF SCOTTSDALE Inc., et al.,
*Defendants/Appellants.*

No. 1 CA-CV 19-0358

FILED 5-28-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-053385
The Honorable Bruce R. Cohen, Judge

**AFFIRMED**

COUNSEL

Bossie Reilly & Oh, PC, Phoenix
By Mary E. Reilly, Melanie L. Bossie, Donna Y. Oh
*Co-Counsel for Plaintiff/Appellee*

Mark J. DePasquale, PC, Phoenix
By Mark J. DePasquale
*Co-Counsel for Plaintiff/Appellee*

Ensign Services Inc., Higley
By Michael J. Ryan
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

¶1        Defendants, collectively called "Osborn Health and Rehabilitation Center" or "Osborn," appeal the superior court's denial of Osborn's motion to compel arbitration.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In 2014, Milris Shook ("Milris") was admitted to Osborn's facility for nursing and rehabilitation services and the facility asked her to sign certain admission documents.  Milris told her daughter, Andeanna Farnes ("Farnes"), "you do it."  Five days later, Farnes signed the papers, including two optional arbitration agreements ("the Agreements"), as "Andeanna Farnes for Milris Shook[.]"  Milris's admission records reflect that she was alert but confused at the time of admission.  The records also show that when Milris was admitted to Osborn's facility she did not understand where she was or what time it was.  She also slurred her speech and had trouble communicating and finishing her thoughts.  Seven years before her admission, Milris executed a health care power of attorney that designated Farnes as Milris's "agent for all matters relating to [her] health[.]"

¶3        Milris died two years after her admission to Osborn's facility.  Plaintiff Susan Shook ("Plaintiff"), Milris's daughter and personal representative of her estate, sued Osborn, alleging negligence and violations of the Adult Protective Services Act, A.R.S. § 46-455.  Osborn moved to compel binding arbitration based on the Agreements executed by Farnes.  Plaintiff countered that Farnes had no authority to sign the Agreements on Milris's behalf.  The superior court found a factual dispute over Farnes' authority to sign the Agreements and held an evidentiary hearing to resolve the issue.

¶4        Plaintiff's expert was the only witness to testify at the evidentiary hearing.  He concluded that Milris could not make an informed decision when she supposedly delegated authority to her daughter.  The

2

expert had reviewed Milris's medical records and emphasized her dementia.

¶5        The superior court considered the expert testimony and documentary evidence entered during the hearing and denied the motion to compel arbitration, finding that Osborn failed to prove that Farnes had the authority to act as Milris's agent and that Milris's actions did not confer actual or apparent authority on Farnes to sign an arbitration agreement. Further, the superior court found that Milris's health care power of attorney did not confer authority on Farnes to execute the Agreements.

¶6        Osborn moved for reconsideration, which the superior court denied.  Osborn timely appealed, and we have jurisdiction under A.R.S. § 12-2101.01(A)(1).

## DISCUSSION

¶7        Osborn argues that the superior court erred when it found Farnes lacked the authority to enter into the Agreements on behalf of Milris. "The trial court's review on a motion to compel arbitration is limited to the determination as to whether an arbitration agreement exists.  We must defer, absent clear error, to the factual findings upon which the trial court's conclusions are based." *Estate of Decamacho ex rel. Guthrie v. La Solana Care and Rehab, Inc.*, 234 Ariz. 18, 20, ¶ 8 (App. 2014) (quotation marks and citations omitted).  We review issues of law *de novo.  Id.*

¶8        "Generally, '[t]he question of whether an agency existed is one of fact.'" *Ruesga v. Kindred Nursing Ctrs., LLC*, 215 Ariz. 589, 595, ¶ 21 (App. 2007) (quoting *Corral v. Fid. Bankers Life Ins. Co.*, 129 Ariz. 323, 326 (App. 1981)).  We defer to the superior court's findings of fact unless those findings are clearly erroneous. *Id.* at 597, ¶¶ 26-27.  The superior court's factual finding of agency, or lack thereof, is "not clearly erroneous if substantial evidence supports it." *Id.* at ¶ 26.  However, the question of agency is a legal determination if the facts are not in dispute. *Id.* at 595, ¶ 21.

¶9        Osborn relies on *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S.Ct. 1421 (2017), to argue that any doubt regarding the formation of an arbitration agreement must be resolved with a presumption that the agreement was properly formed.  This misreads *Kindred Nursing*, which reaffirmed the principle that the Federal Arbitration Act simply requires the states "to place [arbitration] agreements on equal footing with all other contracts." *Id.* at 1429.  It does not, however, alter our standard of review or anoint favored status on the formation of arbitration agreements.

## I. The Superior Court Was Not Clearly Erroneous Regarding Milris's Competency.

**¶10**        Osborn argues that its evidence should have been more highly valued by the superior court in determining whether Milris was competent at admission.  For the first time in its reply brief, Osborn also argues that the testimony of Plaintiff's expert is insufficient as a matter of law under *Golleher v. Horton*, 148 Ariz. 537, 542 (App. 1985).[1]  But *Golleher* does not suggest that an expert's opinion about an individual's competency cannot be considered.  It simply noted that the expert in that case did not reach a conclusion about competency.  *See id.* (finding that a particular expert's testimony fell "short of expressing" a conclusion that an individual was incompetent).  Further, the expert in *Golleher* had speculated that an individual's continued alcohol use may have further impaired that individual's judgment.  *Id.*  We find no similar speculation here and find *Golleher* inapplicable.

**¶11**        In a detailed decision, the superior court outlined the evidence provided by Osborn and Plaintiff.  The court noted that Osborn's records at the time of Milris's admission showed she "was confused as to time and space [and] had slurred speech."  Additionally, one of Osborn's employees separately stated that Milris was disoriented at the time of her admission.  This evidence, combined with the expert's opinion, provided a substantial evidentiary basis for the superior court's factual findings.

**¶12**        Osborn argues that the superior court did not properly credit the evidence it cited, such as the fact that Farnes testified that she believed Milris was capable of making decisions for herself or the fact Milris made other decisions, such as refusing to attend certain medical appointments.  Furthermore, Osborn argues that the superior court's finding is fatally flawed because five days passed between Milris's admission, when her confusion was initially noted, and the execution of the Agreements.

**¶13**        We recognize that the superior court could have reached a different conclusion, but "we do not reweigh conflicting evidence" on appeal.  *See Ruesga*, 215 Ariz. at 597, ¶ 27 (citation omitted).  The superior court considered the evidence cited by Osborn and determined that Milris

---

[1]        Plaintiff correctly points out Osborn failed to challenge this finding in its opening brief.  Because the superior court heavily relied on Milris's competency in reaching its decision, however, we exercise our discretion and consider this argument.  *See Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 203, ¶ 13 n. 3 (App. 2007).

was not competent to grant Farnes authority. Given the expert's opinion and the records reflecting Milris's confusion, we cannot say the superior court's finding was clearly erroneous.

¶14         Osborn also argues the court failed to consider testimony from an Osborn employee about the organization's custom and practice to confirm that patients have authorized their children to complete paperwork when signed. Whatever Milris is alleged to have said, the record included reasonable evidence that she was not competent to authorize her daughter to sign the agreements. The alleged statement does not undermine the other substantial evidence on which the superior court relied.

¶15         We affirm the superior court's determination that Milris lacked competency to authorize Farnes to sign on her behalf, both at admission and five days later when Farnes signed the documents.

**II.      The Superior Court Did Not Err By Finding The Health Care Power of Attorney Did Not Cover Optional Arbitration Agreements.**

¶16         Osborn argues that Milris authorized Farnes to execute the Agreements under a health care power of attorney. Plaintiff counters that Osborn waived the argument and that the health care power of attorney did not include the authority to enter into arbitration agreements. We first address waiver.

¶17         Osborn's counsel told the superior court that he was not relying on the health care power of attorney to prove Farnes' authority, but later clarified that he would raise that argument if the superior court found Milris incompetent. Neither Farnes nor Milris invoked the health care power of attorney at Milris's admission or when Farnes signed the documents. In its ruling, the superior court noted that this argument was not well developed, but ultimately held that the health care power of attorney "would not be a basis to conclude that [Milris] conferred authority upon her daughter to [execute the Agreements]." The superior court considered this matter and we find Osborn did not waive the argument.

¶18         The health care power of attorney in question provided, in relevant part:

> I, Milris Anna Shook, as principal, designate Andeanna Denise Farnes as my agent for all matters relating to my health (including mental health) and including, without limitation, full power to give or refuse consent to all medical,

5

surgical, hospital and related health care. This power of attorney is effective on my inability to make or communicate health care decisions […] or when there is uncertainty whether I am dead or alive have the same effect on my heirs, devisees and personal representatives as if I were alive, competent and acting for myself.

¶19 Courts across the country have reached different conclusions regarding whether such a health care power of attorney covers arbitration agreements. Some states have held that entering into an optional arbitration agreement at admission is a legal decision and not a health care decision. *See Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 352 (Tex. App. 2007) (holding that a medical power of attorney did not confer the authority to make "legal, as opposed to health care, decisions"); *see also Johnson v. Kindred Healthcare, Inc.*, 2 N.E.3d 849, 857-59 (Mass. 2014); *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 593 (Ky. 2012). Others have held that the decision to enter into an arbitration agreement is both a legal decision and a health care decision. *See Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 884-85 (Tenn. 2007) (noting that the "purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a 'legal decision'"); *see also Moffett v. Life Care Ctrs. of Am.*, 187 P.3d 1140, 1145-46 (Colo. App. 2008); *Garrison v. Superior Court*, 33 Cal. Rptr. 3d 350, 358-61 (Cal. Ct. App. 2005).

¶20 All courts addressing this question have analyzed both the state laws governing health care powers of attorney and the specific language used in the health care power of attorney. *See, e.g., Johnson*, 2 N.E.3d at 858-59 (analyzing the language of the Massachusetts statute governing health care agent's authority); *Owens*, 263 S.W.3d at 884 (analyzing Tennessee statute defining "health care decision" in the context of a durable power of attorney for health care). Because the language of Milris's health care power of attorney essentially tracks the standard form language provided in the statute, *see* A.R.S. § 36-3224, we take the same approach.

¶21 In her health care power of attorney, Milris designated Farnes as her agent. A.R.S. § 36-3201 defines "agent" as "an adult who has the authority to make *health care treatment decisions* for another person, referred to as the principal, pursuant to a health care power of attorney." A.R.S. § 36-3201(1) (emphasis added). The phrase "health care treatment decisions" in the statute ties the "decisions" for which agency is conferred to decisions related to obtaining or receiving medical treatment. Though "an agent's

authority to make health care decisions on behalf of [a] principal is limited only by the express language" of the health care power of attorney at issue, A.R.S. § 36-3223(B), our understanding of what constitutes a "health care decision" is informed by the description of an agent's powers in A.R.S. § 36-3201(1). Therefore, a generic health care power of attorney grants an agent authority over treatment decisions. This is further supported by the fact that both the health care power of attorney at issue, as well as the sample contained in A.R.S. § 36-3224, grant the agent "full power to give or refuse consent to all medical, surgical, hospital and related health care." Though not limiting, this language reflects that the agent's powers are focused on obtaining or refusing medical treatment.

¶22    Two unpublished decisions from this Court provide persuasive authority for this outcome. *See Yazedijian v. ARC Santa Catalina Inc.*, 2 CA-CV 2017-0045, 2018 WL 615106 at * 5, ¶ 20 (Ariz. App. Jan. 29, 2018) (mem. decision) ("Whether to sign a nursing home's optional arbitration agreement is not a healthcare decision."); *Hurst v. Silver Creek Inn, LLC*, 1 CA-CV 14-0338, 2015 WL 3551874 at * 5, ¶ 22 (Ariz. App. June 4, 2015) (mem. decision) ("Whether to agree to arbitration is not a health care decision, particularly where, as here, the agreement to arbitrate is not a condition of admission or treatment."). A.R.S. § 36-3201(1) provides that an agent in a health care power of attorney has authority to make health care treatment decisions for a principal. Because the Agreements at issue in this case are optional and not a condition of obtaining treatment at Osborn's facility, and because Milris's health care power of attorney tracks the statutory language, the superior court did not err in finding that Milris's health care power of attorney did not convey authority to enter into optional arbitration agreements on Milris's behalf. *See Yazedijian*, 2 CA-CV 2017-0045, at * 5, ¶ 20; *Hurst*, 1 CA-CV 14-0338, at * 5, ¶ 22.[2]

### III.    The Superior Court Did Not Err By Finding There Was No Implied Actual Authority.

¶23    Osborn argues the evidence shows Farnes had implied actual authority, pointing to Milris's statements to Osborn's agent and Farnes, that

---

[2]    Because Milris's health care power of attorney essentially mirrored the statutory language, we do not have occasion to consider whether different wording of the health care power of attorney would yield a different result. Our holding is limited to the health care power of attorney at issue in this case.

Farnes completed all Milris's admission paperwork, and that Farnes handled certain financial matters for Milris.

**¶24**       "Actual authority may be proved by direct evidence of express contract agency between the principal and agent or by proof of facts implying such a contract or the ratification thereof." *Escareno v. Kindred Nursing Ctrs. West, LLC*, 239 Ariz. 126, 129-30, ¶ 8 (App. 2016) (quotation marks and citation omitted).

**¶25**       Osborn relies heavily on *Ruesga*, which found actual implied authority based in part on a wife's almost fourteen-year history of signing documents for her husband. 215 Ariz. at 599, ¶¶ 35, 36. But unlike in *Ruesga*, Osborn points to no such history here. Instead, Osborn relies on Farnes' actions at the facility and the statements made by Milris. But those actions and statements were made while Milris was incompetent and thus could not convey express or implied actual authority. *Cf. id.* at 597-98, ¶¶ 29-30 (noting unresponsive principal could not convey express or apparent authority).

**¶26**       Furthermore, Osborn's reliance on *Ruesga* fails to consider *Escareno*, which distinguished general family relationships from the spousal relationship. 239 Ariz. at 130, ¶ 11 (citing *Ruesga*, 215 Ariz. at 598, ¶ 33). *Escareno* noted that "a pattern of care-giving alone is insufficient to create an agency relationship" that would allow children to enter into arbitration agreements on behalf of their parents. 239 Ariz. at 132, ¶ 16. We affirm the superior court's finding that no implied actual authority existed.

## IV.    Osborn Waived Its Estoppel Argument.

**¶27**       Finally, Osborn argues for the first time on appeal that the doctrine of equitable estoppel requires arbitration here. But unlike the competency issue, Osborn never raised equitable estoppel before the superior court. "[A]bsent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal." *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994). We find no compelling reason to address this argument and find that it is waived.

## CONCLUSION

**¶28** We affirm the superior court's decision. Plaintiff has requested an award of her reasonable costs under A.R.S. § 12-341. Because Plaintiff prevailed on appeal, we grant this request and award her costs.

