NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

JUSTIN K., MORGAN B., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.K., *Appellees*.

No. 1 CA-JV 22-0137
FILED 11-10-2022

Appeal from the Superior Court in Maricopa County
No. JD39171
The Honorable Michael D. Gordon, Judge

**SPECIAL ACTION JURISDICTION ACCEPTED IN PART AND
RELIEF DENIED;
AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Justin K.*

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Morgan B.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

**¶1**　　　　Justin K. ("Father") appeals the termination of his parental rights to L.K. ("the child").  He argues that the Department of Child Safety ("DCS") did not provide adequate reunification services.  Father and Morgan B. ("Mother") both appeal the denial of her motion for change in physical custody.  For the following reasons, we accept special action jurisdiction as to the custody motion, deny relief, and affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Father and Mother are the child's biological parents and were both incarcerated when the child was born in March 2020.  DCS filed a dependency shortly after the child's birth alleging Mother's neglect due to substance abuse, incarceration, failure to treat her mental health, and failure to provide for the child's basic needs.  DCS alleged the child was dependent as to Father based on the length of his incarceration and his failure to take any steps to establish paternity or seek custody or parenting time with the child.

**¶3**　　　　When Mother pled no contest to the dependency allegations, the court found the child dependent as to her in May 2020 and adopted a family reunification case plan.  Father contested the petition pending a paternity test.  Following the paternity test, the court found Father to be the child's biological father in February 2021.

**¶4**　　　　At a May 2021 hearing, the court changed the case plan to severance and adoption.  In June 2021, DCS moved to terminate Mother and Father's parental rights.  DCS asserted Mother was neglecting to provide proper and effective parental care due to substance abuse and that the length of Mother's felony incarceration deprived the child of a normal home. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (4).  DCS also asserted Father's rights should be terminated due to the length of his felony incarceration.  *See* A.R.S. § 8-533(B)(4).  These grounds were later amended

to allege fifteen-months' time-in-care as to Mother. *See* A.R.S. § 8-533(B)(8)(c).

**¶5** The court held a termination adjudication in October 2021, which Mother contested. Father pled no contest to the allegations in the petition but requested that, if the court did not terminate Mother's rights, his rights not be terminated under the court's best interests analysis.

**¶6** While the matter was under advisement, and just after our Supreme Court filed its decision in *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574 (2021), Father moved to withdraw his no-contest plea and set a status conference about visitation. Father's counsel noted on information and belief that DCS had made no effort to provide for visitation or to help Father form a bond with the child despite Father requesting visitation by video conference for that purpose.

**¶7** Around the same time, Mother moved for a change in physical custody. She noted that, even though DCS had conducted a home study for the child's placement with a paternal relative, DCS's representative testified that DCS did not plan to place the child with that relative.

**¶8** The court granted Father's motion to withdraw his plea and reopen evidence as it related to his rights. Further, the court granted DCS's December 2021 motion to order Father receive video visitation. The court also granted Mother's subsequent motion to reopen evidence as to her rights based on her release from prison.

**¶9** During a combined evidentiary hearing held over five days in April 2022, DCS caseworkers testified that DCS sent Father letters as early as April 2020, offering visitation and suggesting he send letters, pictures, or gifts, and participate in services offered by the Arizona Department of Corrections ("ADOC"). They testified that after Father requested visitation in October 2021, DCS worked with ADOC to set up visitation, despite periods when ADOC stopped responding.

**¶10** The court denied Mother's motion to change custody and granted DCS's motions to terminate parental rights in May 2022. The court found DCS provided sufficient reunification efforts to both parents including visitation with Father beginning in January 2022. The court found DCS had proven the grounds of chronic substance abuse and fifteen-months' time-in-care as to Mother.

¶11 As to Father, the court found that the length of his felony incarceration would preclude a normal home for the child. In particular, the court found the child was born after Father was incarcerated, Father had first requested visitation in October 2021, and therefore, the child had no pre-existing attachment and bond to him. The court called the prospect of Father creating and nurturing a bond while likely incarcerated until the child turns seven "daunting" and noted that Father's presence "will be more of an intrusion and would detract from a normal home life," given the placement's distance from Yuma, where Father was incarcerated.

¶12 After finding that termination was in the child's best interests, the court considered Mother's motion to change the child's placement to a paternal cousin. The court weighed the testimony of DCS's child attachment expert about the disruption and damage of moving the child from the only home the child had ever known. The court noted both the current and Mother's proposed placement were considered kinship and that both ranked equally under A.R.S. § 8-514(B)(3). The court found Mother's proposed placement would not benefit the child more than the current placement. The court also found that DCS had made adequate efforts to find kinship placements and that though Mother's proposed placement was suitable, it came too late and would be unnecessarily disruptive to the child.

¶13 Mother and Father timely appealed. We have jurisdiction over Father's appeal pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1), as well as Arizona Rule of Procedure for the Juvenile Court 601(b)(2)(F).

## DISCUSSION

I. **We accept special action jurisdiction over the issue of custody, but the parents lack standing to challenge the child's placement on appeal.**

¶14 We have an independent duty to determine our jurisdiction over an appeal. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 593, ¶ 8 (App. 2007). Mother does not challenge any of the termination grounds on appeal; she argues only that the superior court erred by denying her motion to move the child to her proposed placement. Mother acknowledges that the proper mechanism for appealing an interlocutory order for placement in an ongoing dependency is by special action. *See Jessicah C. v. Dep't of Child Safety*, 248 Ariz. 203, 207, ¶ 16 (App. 2020).

¶15        But Mother argues the practical effect of the superior court's decision to hold a combined termination adjudication together with her motion for change of placement, and then to issue a decision on both simultaneously, rendered the denial of her motion to change placement a final appealable order. *See Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 374 (App. 1994); *see also* Ariz. R. P. Juv. Ct. ("ARJCP") 601(b)(2)(F) (noting "final orders include . . . an order granting or denying a petition or motion for termination of parental rights.").

¶16        We agree with Mother that the effect of combining the two orders had the practical effect of ending the case. Still the denial of her motion to change placement is unappealable. *See Brionna J. v. Dep't of Child Safety*, 247 Ariz. 346, 349-50, ¶ 10 (App. 2019). Instead, the exercise of our special action jurisdiction is appropriate, even if the order denying her motion is interlocutory and unappealable. *See id.* at 350-51, ¶ 14.

¶17        Even so, we hold that Mother lacks standing to appeal the denial of her motion. The parents do not challenge either the termination grounds found by the superior court or its best interests findings (which are supported by the record) and as such waived those arguments. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 1 (App. 2017) (by challenging only the best interests findings, parents "abandon[] and waive[] any challenge to the court's finding of the statutory" grounds for termination). Once grounds for termination have been proven and the court finds by a preponderance of the evidence that termination is in the child's best interests, the biological parent loses all interest in the child's post-severance placement. *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370, ¶ 2 (App. 2009). We find no merit in Mother's argument that she has standing because she moved to change the child's placement before the superior court severed her rights. In short, Mother simply lacks standing to challenge the child's placement at this point, and to the extent Father joins this argument in his brief, he too lacks standing for the same reason. *Id.* Accordingly we cannot (and do not) consider this argument on appeal.

## II.    DCS made reasonable efforts to facilitate visits between Father and the child after Father belatedly requested them.

¶18        Father likewise fails to challenge – and waives any argument as to – the statutory grounds or best interests findings. *See Crystal E.*, 241 Ariz. at 577, ¶ 1. Father instead argues that DCS failed to prove it had engaged in diligent efforts to reunify him with the child. DCS has a constitutional obligation to undertake reasonable efforts to preserve the family. *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 22, ¶ 46 (App. 2019)

(citing *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 333, ¶ 37 (App. 2007)); *see also Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). Incarceration alone does not render a parent unfit, and DCS must still provide services "designed to address an incarcerated parent's desire to maintain a parent-child relationship," while incarcerated. *Jessie D.*, 251 Ariz. at 582, ¶ 21. But this requirement arises only if "an incarcerated parent requests reunification services, such as visitation." *Id.*

**¶19** Father argues that because he had virtual visits with the child for only three months, DCS's efforts were per se insufficient. But, as Father admits, DCS offered visits at the outset of the case – soon after the child was born in March 2020. Father first requested visits in October 2021, eight months after genetic testing established his paternity. DCS's obligation to make reasonable efforts to provide services began when Father requested them. *See id.* We therefore reject his argument that DCS should have engaged in more strenuous efforts before he requested services.

**¶20** Father also argues the three-month delay between requesting and receiving services shows that DCS's efforts were ineffectual. But the record contains reasonable evidence that DCS diligently and repeatedly contacted ADOC to facilitate visitation and eventually secured a court order for video visits. To the extent Father invites us to reweigh the evidence of DCS's efforts on appeal, we decline to do so. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). Father has shown no error.

**¶21** Reasonable evidence supported the findings of the superior court as to both parents and they have shown no error.

## CONCLUSION

**¶22** We accept special action jurisdiction in part, decline relief, and affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA