IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

ARISTEO ESCARENO, PERSONAL REPRESENTATIVE OF THE
ESTATE OF MARIA ESCARENO, ON BEHALF OF THE
ESTATE OF MARIA ESCARENO; AND ARISTEO ESCARENO,
PERSONAL REPRESENTATIVE, FOR AND ON BEHALF OF
MARIA ESCARENO'S STATUTORY BENEFICIARIES
PURSUANT TO A.R.S. § 12-612(A),
*Plaintiff/Appellant,*

*v.*

KINDRED NURSING CENTERS WEST, L.L.C.,
A DELAWARE LIMITED LIABILITY COMPANY,
DBA HACIENDA REHABILITATION AND CARE CENTER,
NKA KINDRED NURSING AND REHABILITATION-HACIENDA;
KINDRED HEALTHCARE OPERATING, INC.,
A DELAWARE CORPORATION;
KINDRED HEALTHCARE, INC., A DELAWARE CORPORATION;
JOSEPH CHESNEY, ADMINISTRATOR;
AND PATRICK KINNEY, ADMINISTRATOR,
*Defendants/Appellees.*

No. 2 CA-CV 2015-0046
Filed January 26, 2016

---

Appeal from the Superior Court in Cochise County
No. CV201200501
The Honorable Karl D. Elledge, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Law Office of Scott E. Boehm, P.C., Phoenix
By Scott E. Boehm

and

Wilkes & McHugh, P.A., Phoenix
By Melanie L. Bossie and Mary Ellen Spiece
*Counsel for Plaintiff/Appellant*

Quintairos, Prieto, Wood & Boyer, P.A., Phoenix
By Anthony J. Fernandez, Vincent J. Montell, and Rita J. Bustos
*Counsel for Defendants/Appellees*

———————————————

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Eckerstrom and Judge Miller concurred.

———————————————

V Á S Q U E Z, Presiding Judge:

¶1        Aristeo Escareno, as personal representative of the Estate of Maria Escareno and on behalf of the decedent's statutory beneficiaries, appeals from the trial court's order compelling arbitration of his claim brought under the Adult Protective Services Act (APSA) against Kindred Nursing Centers West, L.L.C., Kindred Healthcare Operating, Inc., Kindred Healthcare, Inc., Joseph Chesney, and Patrick Kinney (collectively, Kindred).  On appeal, Aristeo argues the arbitration agreement relied on by Kindred was unenforceable against Maria's estate because it was not signed by Maria and he was not authorized to sign the agreement on her behalf as her agent.[1]  For the reasons set forth below, we reverse the court's order and remand for further proceedings.

———————————

[1]Aristeo also argues the agreement was unconscionable and a contract of adhesion.  Although we have serious concerns about the

**Factual and Procedural Background**

**¶2**      We view the facts in the light most favorable to upholding the trial court's order compelling arbitration.[2] *Estate of DeCamacho ex rel. Guthrie v. La Solana Care and Rehab, Inc.*, 234 Ariz. 18, n.1, 316 P.3d 607, 608 n.1 (App. 2014). Maria Escareno moved from Oklahoma to Arizona with her adult son, Aristeo, in 2006 or 2007. While in Arizona, Maria suffered a stroke and began to develop cognitive disabilities. Aristeo then assumed some of her responsibilities, paying her bills and signing medical documents on her behalf. However, Maria's capacity to live independently continued to deteriorate, and she ultimately was diagnosed with encephalopathy, cognitive deficits, and "a severe case of dementia." At the height of her disability, Maria was coherent at times but had difficulty remembering who Aristeo was, could not "participate in a conversation," and was "childlike."

**¶3**      In May 2009, Arizona Adult Protective Services (APS) opened a case regarding Maria's care because she had little assistance or supervision while Aristeo worked during the day. APS "gave [Aristeo] an ultimatum: Either [he] put her in a home . . . to take care of her or [he] could also face . . . jail time." He then had Maria admitted to three different assisted-living facilities between October 2009 and April 2010, ultimately choosing Kindred because "there was no other facilities around that would be able to take her

---

alternative dispute resolution agreement, because the agency issue is dispositive, we do not address these arguments.

    [2]Neither party requested, and the trial court did not provide, written findings of facts or specific conclusions of law in this case. "In the absence of express findings of fact, we must presume the court found every controverted issue of fact necessary to sustain the judgment, providing there was evidence in the record to support the same." *Helfenbein v. Barae Inv. Co.*, 19 Ariz. App. 436, 440, 508 P.2d 101, 105 (1973).

because of her dementia."[3]  At each facility, Aristeo signed the admission documents on behalf of Maria.  And, at Kindred, he also signed the alternative dispute resolution (ADR) agreement at issue in this case.  It states, in relevant part:

> Any and all claims or controversies arising out of or in any way relating to this Agreement or the Resident's stay at the Facility including disputes regarding the interpretation of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties . . . , irrespective of the basis for the duty or of the legal theories upon which the Claim is asserted, shall be submitted to alternative dispute resolution as described in this Agreement.

¶4        Maria died in April 2011, and, the following year, Aristeo filed the underlying civil action alleging wrongful-death and APSA claims against Kindred.  Kindred filed a motion to dismiss and to compel arbitration pursuant to the ADR agreement signed by Aristeo.  In his response, Aristeo argued *inter alia* that he lacked authority to sign the agreement for Maria and that the wrongful-death claim was brought on behalf of Maria's beneficiaries, none of whom had signed the ADR agreement in their own capacity.  In response to his agency argument, Kindred countered that "Aristeo's custom of acting on [Maria's] behalf [was] enough to prove agency as a matter of law."

---

[3]When Aristeo had Maria admitted at Kindred, the facility operated under a different name, Hacienda Rehabilitation and Care Center.

**¶5**        The parties submitted a stipulated set of exhibits, and, after hearing oral argument, the trial court denied the motion as to the wrongful-death claim, but ordered that the parties submit the APSA claim to arbitration and stayed the action pending that claim's resolution.[4]  This appeal followed.[5]  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).  *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, ¶¶ 16-20, 977 P.2d 769, 774-75 (1999).

## Discussion

**¶6**        Aristeo argues the trial court erred by compelling arbitration of the APSA claim because he "had no authority to sign the ADR agreement" on behalf of Maria.  "Generally, whether agency exists is a question of fact, but when the material facts are not in dispute, the existence of such a relationship is a question of law for the court to decide."  *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, ¶ 12, 270 P.3d 852, 856 (App. 2011); *see Salvation Army v. Bryson*, 229 Ariz. 204, ¶ 23, 273 P.3d 656, 663 (App. 2012).  In this case, the parties do not dispute the material facts found in their stipulated set of exhibits, but rather, they dispute the legal significance of those facts.  Our review therefore is de novo.  *See DeCamacho*, 234 Ariz. 18, ¶ 8, 316 P.3d at 609.

---

[4]*See DeCamacho*, 234 Ariz. 18, ¶ 27, 316 P.3d at 614 ("[A]n APSA claim is derivative of the decedent's rights, whereas a wrongful death claim is independently held by the decedent's statutory beneficiaries.  Therefore, the APSA claim is brought on behalf of [the decedent's] estate by [the] personal representative . . . .").

[5]Initially, Aristeo filed a petition for special action requesting review of the trial court's order, which this court declined.  Then, at the request of Aristeo, the trial court amended its order, clarifying that "[t]here [was] no just reason for delay in the entry of final judgment on [Kindred's] Motion to Dismiss and Compel Arbitration," thereby making its order appealable pursuant to Rule 54(b), Ariz. R. Civ. P.  *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, ¶¶ 16-20, 977 P.2d 769, 774-75 (1999).

**¶7**          "'[T]he fundamental prerequisite to arbitration is the existence of an actual agreement or contract to arbitrate.'" *Id.* ¶ 10, *quoting Schoneberger v. Oelze*, 208 Ariz. 591, ¶ 17, 96 P.3d 1078, 1082 (App. 2004); *see* A.R.S. § 12-1501 (arbitration agreement "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract").[6] Thus, a defendant seeking to compel arbitration must show that the plaintiff accepted the arbitration agreement. *See Nationwide Res. Corp. v. Massabni*, 134 Ariz. 557, 562, 658 P.2d 210, 215 (App. 1982); *see also DeCamacho*, 234 Ariz. 18, ¶ 11, 316 P.3d at 610 ("A valid contract is formed when there is an offer, an acceptance, [and] consideration . . . ."). Similarly, if the defendant asserts that an agent of the plaintiff signed the agreement, the defendant bears the burden to show the person in fact was the plaintiff's agent and, thus, had authority to do so. *See Goodman*, 229 Ariz. 25, ¶ 11, 270 P.3d at 856; *see also* Restatement (Third) of Agency § 6.01 (2006) (describing agency relationship).[7]

**¶8**          An agent may have authority to act on behalf of a principal through either actual or apparent authority. *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, ¶ 26, 269 P.3d 678, 686-87 (App. 2011). "Actual authority 'may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof.'" *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶ 29, 161 P.3d 1253, 1261 (App. 2007), *quoting Corral v. Fid. Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App. 1981). Apparent authority, in contrast, arises when "the principal has intentionally or inadvertently induced third persons to believe that such a person

---

[6]Although our legislature has adopted the Revised Uniform Arbitration Act, *see* A.R.S. §§ 12-3001 through 12-3029, we cite to the statutes governing arbitration agreements at the time of the contract formation in this case, *see* § 12-3003(A)(1).

[7]Arizona generally applies the Restatement of Agency unless it is contrary to prior precedent. *Fid. & Deposit Co. of Maryland v. Bondwriter Sw., Inc.*, 228 Ariz. 84, ¶ 30, 263 P.3d 633, 639 (App. 2011); *Cannon v. Dunn*, 145 Ariz. 115, 116, 700 P.2d 502, 503 (App. 1985).

was his agent although no actual or express authority was conferred on him as agent." *Reed v. Gershweir*, 160 Ariz. 203, 205, 772 P.2d 26, 28 (App. 1989). In this case, Kindred conceded below that, when Maria arrived at its nursing facility, she did not have the capacity to "intentionally or inadvertently induce[]" the staff into believing Aristeo was her agent. *Id.* Thus, apparent authority cannot apply here. *See Ruesga*, 215 Ariz. 589, ¶ 30, 161 P.3d at 1261-62. Instead, the parties focus their arguments on whether Maria had granted Aristeo actual authority prior to her admission at the Kindred facility.

¶9            Kindred relies exclusively on *Ruesga*, 215 Ariz. 589, ¶¶ 29-36, 161 P.3d at 1261-63, to support its position. In *Ruesga*, the plaintiff admitted her husband, who was incapacitated at the time, to an assisted-living facility and signed an ADR agreement on his behalf. *Id.* ¶¶ 2-5. The plaintiff later filed multiple claims against the facility on behalf of her husband's estate, and the facility moved to dismiss and compel arbitration. *Id.* ¶ 6. The trial court initially denied the motion, "concluding that '[t]he arbitration agreement [wa]s not a valid contract because it [had not been] signed by Mr. Ruesga or his authorized agent.'" *Id.* (alterations in *Ruesga*). However, later discovery revealed several medical records indicating "a history of [the plaintiff] acting and making decisions on [her husband's] behalf." *Id.* ¶¶ 7, 35. Based on these documents, the court granted the facility relief from the previous ruling and ordered the parties to resolve the claims through arbitration. *Id.* ¶ 7.

¶10           On special-action review, this court affirmed. *Id.* ¶¶ 36, 40. As an initial matter, we noted "'the degree of proof required to establish and define the agency relationship'" between spouses is lower than with non-spouses. *Id.* ¶ 33, *quoting State Farm Mut. Auto. Ins. Co. v. Long*, 16 Ariz. App. 222, 225, 492 P.2d 718, 721 (1972). We then determined that the newly discovered medical records "not only constituted circumstantial evidence of an agency relationship, but arguably contained an express authorization" from the husband to the wife. *Id.* ¶ 35. Both the husband and wife had signed one document, and the husband had "failed to contest [the wife's] signature as [his] 'Agent or Legally Authorized Representative.'" *Id.* ¶¶ 19, 35; *see* Restatement § 1.03 cmt. b ("Silence may constitute a

manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence."). In addition, the husband had signed a health insurance document that authorized the disclosure of health information to the wife and for her "to make, inter alia, a 'primary care physician change,' or a 'change in network.'" *Id.* ¶ 19; *see* Restatement § 3.01 ("Actual authority . . . is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf."). The facility also submitted medical records "that indicated [the wife] had controlled [the husband's] care even when he was conscious and able to 'follow some simple commands.'" *Id.* ¶¶ 19, 35. Accordingly, this court concluded "'there were sufficient facts to show that both [the husband's] actions and his wife's long history of making decisions on his behalf gave rise to an agency relationship such that [the wife] could bind her husband to the ADR Agreement.'" *Id.* ¶ 36.

¶11 We find *Ruesga* distinguishable. Unlike the spousal relationship in that case, Aristeo is Maria's son, and therefore Kindred's burden to establish the existence of an agency is higher than in *Ruesga. See id.* ¶ 33. More importantly, though, the record contains no evidence of a manifestation by Maria granting authority to her son or any "'facts implying such contract or the ratification thereof.'" *Id.* ¶ 29, *quoting Corral*, 129 Ariz. at 326, 630 P.2d at 1058. Although Aristeo testified during his deposition that he had signed documents in other circumstances on Maria's behalf before her admission to Kindred's facility, "[i]t is well settled that the declarations of an agent are insufficient to establish the fact or extent of his authority." *Jolly v. Kent Realty, Inc.*, 151 Ariz. 506, 512, 729 P.2d 310, 316 (App. 1986).

¶12 For example, Aristeo testified that Maria had not handled her own financial matters since 2007. But, during his deposition, Aristeo stated he was not "on her [bank] account," and, when asked how he acted on her behalf, he explained:

> Well, everybody [at the bank] knew
> us, because I would bring her to the bank,

> take her here or there. And I guess just—
> you know, I would take mom with me
> when I would go get that set up.
>
> Then when I realized that mom
> couldn't do much for herself, I asked—we
> talked to the banker, and they set it up to
> where if I had to go and pay her rent or
> stuff, I could get it out of her account and
> put it towards that.[8]

He also clarified that, "[o]ut of her money, [he] would only pay for her rent," and that he was "providing all [other] financial support for [Maria]." This testimony does not amount to a manifestation by Maria showing that she had "failed to contest" Aristeo's acts on her behalf. *Ruesga*, 215 Ariz. 589, ¶ 35, 161 P.3d at 1263. Moreover, because Aristeo's assistance apparently increased as Maria's capacity to handle these matters decreased, it is questionable whether she even had the capacity to grant authority to her son.[9] *Cf. Golleher v. Horton*, 148 Ariz. 537, 540-41, 715 P.2d 1225, 1228-29 (App. 1985) (discussing capacity to grant power of attorney).

**¶13** Notably, in its answering brief, Kindred does not dispute evidence in the record that shows Maria experienced cognitive impairment between the time she suffered a stroke after

---

[8]The record does not include any document from Maria's bank showing that Aristeo signed on Maria's behalf or that Maria added Aristeo to the account. *See Ruesga*, 215 Ariz. 589, ¶ 19, 161 P.3d at 1259.

[9]Similarly, Aristeo argues in his reply brief that, even if Maria "had created an agency before she became incapacitated . . . , it would have terminated as a matter of law after she became incapacitated." However, this argument was not presented to the trial court, or in the opening brief, and we therefore will not address it here. *See Romero v. Sw. Ambulance*, 211 Ariz. 200, ¶ 6 & n.3, 119 P.3d 467, 470-71 & n.3 (App. 2005) (issues raised for first time on appeal waived).

arriving in Arizona and when she was actually diagnosed with "a severe case of dementia" in 2009. And, in any event, even when we presume Maria was capable of creating an agency relationship, *see Golleher*, 148 Ariz. at 541, 715 P.2d at 1229 (describing presumption of competence), Aristeo's testimony that he transferred money from her bank to pay her bills, by itself, does not amount to circumstantial evidence that Maria actually created such a relationship, *see State Farm*, 16 Ariz. App. at 225, 492 P.2d at 721 (actual agency created by "'spoken words or other conduct of the principal'"), *quoting* Restatement (Second) of Agency § 26 (1958). Moreover, even if his testimony was sufficient evidence of an actual, implied agency, its scope does not suggest a broad agency relationship but, rather, appears limited to the transfer of money for the purpose of paying bills. *See* Restatement § 2.02 ("Scope of Actual Authority"); Restatement § 3.11 cmt. c (not reasonable to assume agent has lingering authority when "agent's authority was limited . . . to a specific undertaking"); *cf. Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, ¶ 29, 173 P.3d 453, 461 (App. 2007) (discussing factors to apply when considering scope of agency).

¶14 Kindred also asserts Aristeo "would bring [Maria] to medical appointments and execute all the documents for his mother when she was mentally capable of handling her own affairs." The entire testimony on which it relies, is as follows:

> Q. . . . When you went to the doctor's office with your mother, did you fill out whatever paperwork was presented by the doctor's office?
>
> . . . .
>
> A. Yes, I would fill them out, because she—you know, her eyesight wasn't so great. I would just do it because a lot of times when she had to go in to the doctor, if it was like real bad where she couldn't sign for herself, I'd ask if I could sign for her, because I was her—I let them

10

know that I was the only person there to take care of her. And if she didn't get the treatment, then, you know . . . .

Q. . . . So you told her doctor's office that you were taking responsibility for her?

A. Yes.

Later in his testimony, Aristeo also explained:

Q. . . . The time came when your mom was no longer capable of handling her own affairs. That . . . time came here in Arizona, correct?

A. Yes.

Q. It was sometime around that period when a health care provider told you that your mom had severe dementia, correct?

A. Yes.

Q. Was it around that time that you began signing for your mom at health care providers' offices?

A. Yes.

¶15        Like Aristeo's testimony regarding Maria's financial affairs, we cannot say this testimony establishes a manifestation of assent by Maria, even if we presume she was competent at that time. *See Ruesga*, 215 Ariz. 589, ¶¶ 19, 35, 161 P.3d at 1259, 1263; *Golleher*, 148 Ariz. at 541, 715 P.2d at 1229; Restatement §§ 1.03, 3.01. Nor can we treat Aristeo's initiative in taking care of his mother's health needs as circumstantial evidence of an agency relationship. As we explained in *Ruesga*, although signing medical documents could

"arguably lend support to the determination that [Maria] had intended [Aristeo] to act as [her] agent, [he] had statutory authority 'to make health care decisions'" to the extent she was "'unable to make or communicate' such decisions, even absent any agency authority." *Ruesga*, 215 Ariz. 589, n.7, 161 P.3d at 1263 n.7, *quoting* A.R.S. § 36-3231(A).[10] Thus, we cannot "rely on those documents to determine an agency relationship." *Id.*

**¶16** We recognize, as a general matter, that the elderly very well may rely on others to meet their needs as their health deteriorates. But a pattern of care-giving alone is insufficient to create an agency relationship, particularly in the absence of any evidence showing a manifestation of assent on the part of the elderly person. Accordingly, the record here does not show that Aristeo had authority to sign the ADR agreement on behalf of Maria when she was admitted to Kindred, *see Goodman*, 229 Ariz. 25, ¶ 11, 270 P.3d at 856, and, in turn, Maria's estate is not bound by that agreement, *see Nationwide Res. Corp.*, 134 Ariz. at 562, 658 P.2d at 215. Therefore, the trial court abused its discretion in finding facts sufficient to establish an agency relationship and thus granting Kindred's motion to dismiss and compel arbitration of the APSA claim. *See DeCamacho*, 234 Ariz. 18, ¶ 8, 316 P.3d at 609.

## Disposition

**¶17** For the foregoing reasons, we reverse the trial court's order compelling arbitration and remand for further proceedings.

---

[10]Section 36-3231(A) provides that, "[i]f an adult patient is unable to make or communicate health care treatment decisions," a health care provider must consult a surrogate. Subsection (A)(2) of the statute specifies that the surrogate may be an adult child, and "[i]f the patient has more than one adult child, the health care provider shall seek the consent of a majority of the adult children who are reasonably available for consultation." In this case, Maria's adult children had "consent[ed] and agree[d] that [Aristeo] should be her financial and medical decision-maker." *See* § 36-3231(A)(2).