NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DONALD H. MAYES, *Plaintiff/Appellee,*

*v.*

TOM'S CAMPERLAND, INC., *Defendant/Appellant.*

No. 1 CA-CV 22-0753
FILED 8-01-2023

---

Appeal from the Superior Court in Maricopa County
No. CV2022-003972
The Honorable Randall H. Warner, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

---

COUNSEL

Johnson, DeLuca, Kurisky & Gould, PC, Houston, Texas
By George A. Kurisky, Jr., Philip C. Brashier
*Co-Counsel for Defendant/Appellant*

The Cavanagh Law Firm, P.A., Phoenix
By Kerry M. Griggs
*Co-Counsel for Defendant/Appellant*

Clark & Associates, Eagle, Idaho
By Eric R. Clark
*Counsel for Plaintiff/Appellee*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

**¶1**        Defendant Tom's Camperland, Inc. (Tom's) appeals from the denial of its motion to compel arbitration. Because Tom's has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In January 2021, plaintiff Donald H. Mayes entered into a contract with Tom's to buy a recreational vehicle with payments totaling over $300,000. The six-page form contract, provided by Tom's, detailed the financing terms and stated that the terms applicable to the sale of a used vehicle did not apply to this sale.

**¶3**        On page one, in a separate box, Tom's form contract included an "Agreement to Arbitrate," stating: "By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action."  Mayes did not sign the signature block on Tom's form contract in the box directly below this provision.

**¶4**        On page five, the contract included another box entitled "Arbitration Provision" that further detailed each party's rights to compel arbitration on "any claim or dispute, whether on contract, tort, statute, or otherwise," and explained that any arbitration would be governed by "the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law." As he did at the bottom of each page of the contract, Mayes signed at the bottom of page five. On page six, Mayes signed under the provision stating "you acknowledge that you have read all pages of this contract, including the arbitration provision on page 5, before signing below. You agree to the terms of this contract . . . ."

**¶5**        Mayes later filed this suit, alleging he took his RV to a different dealer for maintenance and learned he had bought a used vehicle not covered by a manufacturer's warranty. Alleging he was told by Tom's that the RV was new, Mayes' complaint asserted claims for breach of

contract, breach of the consumer fraud act and fraud in the inducement. In response, Tom's moved to compel arbitration, arguing Mayes "signed and agreed to the Arbitration Agreement" and that his claims fell within the scope of that agreement. Mayes opposed the motion, arguing he intentionally did not sign the Agreement to Arbitrate box on page one and was therefore not bound to arbitrate the dispute.

¶6        Along with oral argument on the motion, the court held an evidentiary hearing where Mayes and Tom's finance manager and general manager testified. Mayes testified that he read the Arbitration Agreement and intentionally did not sign the agreement, indicating that he did not want to arbitrate any dispute between the parties. The finance manager testified that he mistakenly did not prompt Mayes to sign the Arbitration Agreement but would not have sold the RV had he known that Mayes had not signed the arbitration provision. Tom's general manager also testified that the dealership's policy was to not go through with the deal if the customer did not agree to arbitrate. But he agreed that the signature under the Arbitration Agreement on page one was to signify the customer agreed to arbitrate.

¶7        After taking the matter under advisement, the court issued a minute entry concluding the Arbitration Agreement on page one was "to leave no doubt that the buyer agrees to arbitrate." The court found that "Mayes testified credibly that he saw this signature line but intentionally did not sign because he did not agree to the arbitration provision." Based on the evidence provided, including the testimony at the hearing, the court found the parties did not manifest an agreement to the Arbitration Agreement. The court noted the ambiguity between the signature under the language on page six, where Mayes acknowledged that he had read the arbitration provision, and the lack of signature on page one but "resolve[d] that ambiguity by finding no meeting of the minds on the issue of arbitration." Thus, the court denied Tom's motion to compel arbitration. Tom's timely filed a notice of appeal from that ruling.

**DISCUSSION**

**I.        Jurisdiction.**

¶8        This court has "an independent duty to determine whether [it has] jurisdiction. *State v. Bayardi*, 230 Ariz. 195, 197 ¶ 6 (App. 2012). This court derives its appellate jurisdiction from statute. Ariz. Const. art. VI, § 9; *Garza v. Swift Transp. Co., Inc.*, 222 Ariz. 281, 283 ¶ 12 (2009). Generally, an order denying a motion to compel arbitration is a non-final judgment that

cannot be appealed. *See* Ariz. Rev. Stat. (A.R.S.) § 12-2101(A)(1) (2023); *see also Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 431 ¶ 21 (App. 2016).[1] Tom's notice of appeal cites A.R.S. § 12-2101.01(A)(1), which grants this court jurisdiction to hear appeals from orders "denying an application to compel arbitration made under [A.R.S.] § 12-1502 or 12-3007." But Tom's motion to compel arbitration relied solely on 9 U.S.C. § 1 through 16, the Federal Arbitration Act. Thus, although challenged by Mayes, A.R.S. § 12-2101.01(A)(1) does not grant this court appellate jurisdiction. *See Sec. Alarm Fin. Enters., L.P. v. Fuller*, 242 Ariz. 512, 515 ¶ 5 (App. 2017).

¶9        "[U]nder appropriate circumstances," this court may exercise special action jurisdiction "even when the parties have not requested such relief." *Phillips v. Garcia*, 237 Ariz. 407, 410 ¶ 6 (App. 2015); *see also Danielson v. Evans*, 201 Ariz. 401, 411 ¶ 35 (App. 2001) (after finding appellate jurisdiction lacking, court sua sponte accepted special action jurisdiction). This case presents just such a situation, particularly given that the issues presented are largely issues of law. *Fuller*, 242 Ariz. at 515 ¶ 7; Ariz. R.P. Spec. Act. 1(a). Thus, in its discretion, this court exercises special action jurisdiction to hear Tom's appeal. *See* A.R.S. § 12-120.21(A)(4).

## II.     The Superior Court Properly Denied Tom's Motion to Compel Arbitration.

¶10        The denial of a motion to compel arbitration is reviewed de novo, *Fuller*, 242 Ariz. at 515 ¶ 9, recognizing this court will defer to the superior court's findings of fact absent clear error, *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 246–47 ¶ 16 (App. 2005). "[T]he fundamental prerequisite to arbitration is the existence of an actual agreement or contract to arbitrate." *Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 239 Ariz. 126, 129 ¶ 7 (App. 2016) (citation omitted); s*ee also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("the [Federal Arbitration Act] does not require parties to arbitrate when they have not agreed to do so"). The burden is on the party seeking to compel arbitration to "show that the plaintiff accepted the arbitration agreement." *Escareno*, 239 Ariz. at 129 ¶ 7.

¶11        Tom's argues the court erred by disregarding the presumption favoring arbitration under both federal and Arizona law. But such a presumption does not apply when the parties dispute whether there is a valid agreement to arbitrate. *See First Options of Chi., Inc. v. Kaplan*, 514

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

U.S. 938, 944–45 (1995); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 526–27 (3d Cir. 2009) (citing cases). As the Arizona Supreme Court noted, "[a]lthough it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51 ¶ 11 (1999). Because the primary issue here is whether the parties agreed to arbitrate their disputes, the presumption favoring arbitration does not influence the analysis.

**¶12**        Tom's also argues that Mayes agreed to arbitration by signing pages five and six of the contract. Both federal and Arizona courts have held that general state contract principles apply when determining the validity of arbitration agreements. *See Kaplan*, 514 U.S. at 944; *Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 150 (1992). Under Arizona law, contract formation requires the party seeking to enforce the contract to show that the other party expressed a manifest intention to be bound by the contract. *Tabler v. Indus. Comm'n*, 202 Ariz. 518, 52–21 ¶ 8 (App. 2002). Nothing on page five of the contract shows Mayes intended to be bound by the Arbitration Agreement. The signature line for page five, presumably included to show the signor has seen the page, includes no language showing agreement or explains that, by signing, Mayes agreed to the Arbitration Agreement. Thus, Mayes' signature on page five does not indicate he agreed to the Arbitration Agreement.

**¶13**        Similarly, Mayes did not bind himself to the Arbitration Agreement by signing on page six. Under federal and Arizona law, an arbitration provision is treated as a separate agreement, independent of the underlying contract. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967); *Hamblen v. Hatch*, 242 Ariz. 483, 487 (2017). Consistent with this principle, the contract included the separate Arbitration Agreement on page one for Mayes to agree to arbitrate any disputes. Thus, by not signing the agreement on page one, Mayes demonstrated his intent not to be bound by the Arbitration Agreement, as the superior court found after the evidentiary hearing. To read the agreement on page six, where the signor agrees to the contract terms, to include the Arbitration Agreement, would render meaningless the separate Arbitration Agreement (including the separate signature requirement that Mayes did not sign) on page one. *Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 478 ¶ 56 (App. 2010) ("[A] cardinal rule of contract interpretation that we do not construe one term of a contract to essentially render meaningless another term.").

¶14 Next, citing *Cooper v. Youngtown Health Inc.*, 1 CA-CV 19-0854, 2020 WL 7024347 (Ariz. App. Nov. 24, 2020) (mem. dec.) and *Serafin v. Balco Properties Ltd., LLC*, 185 Cal. Rptr. 3d 151 (App. 2015), Tom's argues the lack of signature on page one is not dispositive. *Serafin* explains, "it is not the presence or absence of a signature [on an agreement] which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters." 185 Cal. Rptr. 3d at 159 (citation omitted). Tom's argues that Mayes' failure to object when signing the contract shows he agreed to the Arbitration Agreement. Consistent with *Serafin*'s directive, here, the superior court found there was no evidence of an agreement to arbitrate after considering, among other things, testimony received at an evidentiary hearing. And as *Cooper* explains, whether a party intended to be bound is a question of fact. 2020 WL 7024347, at *3 ¶ 19; *see also Tabler*, 202 Ariz. at 521 ¶ 12. By not signing, Mayes did not intend to be bound by the Arbitration Agreement. Moreover, Tom's failed to question Mayes' failure to sign the arbitration provision. Tom's argues that Mayes testimony is "unreasonable and unreliable," but this court does not "reweigh the evidence or reassess credibility issues on appeal." *Williams v. King*, 248 Ariz. 311, 317 ¶ 26 (App. 2020). Tom's has not shown the superior court erred in finding that Mayes did not agree to the Arbitration Agreement.

¶15 Also citing *Cooper*, Tom's argues that signing on page one was not a condition precedent to enforcing the Arbitration Agreement. The Arbitration Agreement, however, including a separate signature block, was on a form Tom's provided, meaning any ambiguity is to be construed against Tom's. *See MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302 ¶ 10 (App. 2008) (citations omitted). Moreover, to enforce an arbitration agreement, Tom's needed to show that Mayes agreed to arbitrate. *See Escareno*, 239 Ariz. at 129 ¶ 7. Nor does Tom's waiver argument change the conclusion; Tom's first must show the parties agreed to arbitrate, which it failed to do. *See Fuller*, 242 Ariz. 512, 516 ¶ 12 (deciding waiver after determining no contract principles invalidated the arbitration agreement).

¶16 Tom's finally argues that Mayes is bound by the Arbitration Agreement based on the "direct benefits" estoppel doctrine. Under this concept, "a nonsignatory may be compelled to arbitrate only when the nonsignatory (1) knowingly exploits the benefits of an agreement containing an arbitration clause, or (2) seeks to enforce terms of that agreement or asserts claims that must be determined by reference to the agreement." *Austin v. Austin*, 237 Ariz. 201, 210 ¶ 29 (App. 2015). Given that Mayes signed the agreement to purchase the RV, Tom's has not shown that he is a "nonsignatory" under the "direct benefits" estoppel concept recounted in *Austin*. Moreover, although noting the concept, *Austin* found

it did not apply to the facts presented in that case. *Id.* at 210 ¶ 31. And on the record presented here, Tom's has not shown that this case presents facts implicating this concept, particularly given Mayes' fraud in the inducement claim seeks to undo the contract.

**¶17**        The other cases Tom's cites involved third parties seeking to enforce rights under a contract including a valid, binding arbitration provision entered into by another, and are distinguishable on that basis. *See Benson v. Casa De Capri Enters., LLC*, 252 Ariz. 303, 305 ¶ 3 (2022) (binding arbitration provision in an insurance contract); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) (binding arbitration provision in a joint venture agreement); *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 380 (5th Cir. 2008) (binding arbitration provision in a loan agreement); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003) (binding arbitration provision in joint venture agreement). Unlike these cases, this dispute is between the original participants. Tom's has not shown how those cases should extend to these facts.

## III.    Attorneys' Fees Requests.

**¶18**        Both parties seek their taxable costs under A.R.S. § 12-341, and Mayes seeks his attorneys' fees on appeal under A.R.S. § 12-341.01. Because Tom's is not the prevailing party, its request for costs is denied. Mayes is awarded his reasonable attorneys' fees and taxable costs contingent upon compliance with ARCAP 21.

## CONCLUSION

**¶19**        Accepting special action jurisdiction, the order denying Tom's motion to compel arbitration is affirmed.

