NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

GREEN CROSS MEDICAL, INC., an Arizona non-profit corporation,
*Plaintiff/Appellee*,

*v.*

CARYN MANGISI, Trustee of the John V. Gally Family Protective Trust,
dated January 11, 1993, *Defendant/Appellant*.

No. 1 CA-CV 23-0692

FILED 10-08-2024

Appeal from the Superior Court in Navajo County
No.  S0900CV201200208
The Honorable Joseph Samuel Clark, Judge

**AFFIRMED**

COUNSEL

Aspey Watkins & Diesel, PLLC, Flagstaff
By Whitney Cunningham, Caitlin Rynn
*Counsel for Plaintiff/Appellee*

Hunter, Humphrey & Yavitz, PLC, Phoenix
By Randall S. Yavitz, Isabel M. Humphrey
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

**¶1**         Caryn Mangisi, Trustee of the John V. Gally Family Protective Trust, dated January 11, 1993 ("the Trust"), appeals the superior court's judgment awarding $3,565,000 in damages, along with attorneys' and expert witness fees and accruing interest, to Green Cross Medical, Inc. ("Green Cross").  We affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

**¶2**         In April 2012, John Gally, in his capacity at the time as Trustee of the Trust, entered a lease agreement to allow Green Cross to cultivate and dispense medical marijuana on commercial property held by the Trust in Winslow, Arizona ("the Property").  The lease allowed Green Cross to lease the Property until it obtained a dispensary operating license from the Arizona Department of Health Services ("ADHS").  After issuance of the license, the lease provided for a three-year term and an additional three-year tenant's renewal option.

**¶3**         The Property was one of only two parcels within the Winslow Community Health Analysis Area ("CHAA") appropriately zoned for a medical marijuana dispensary.  Another entity seeking an operating license from ADHS, The Medicine Room ("TMR"), obtained permission from the owner of the other property.  A few weeks after entering the lease agreement, Green Cross received a letter from Gally, through Gally's attorney, Kathryne Ward, stating that Gally and the Trust were unilaterally revoking the lease.  The Property's locks were changed, and from then on, Green Cross could not access the Property.

---

[1] We take portions of the facts and procedural history from this court's prior memorandum decision and opinion involving the parties.  *See Green Cross Med., Inc. v. Gally* ("*Green Cross I*"), 1 CA–CV 12–0610, 2013 WL 5435817 (Ariz. App. Sept. 26, 2013) (mem. decision); *Green Cross Med., Inc. v. Gally* ("*Green Cross II*"), 242 Ariz. 293 (App. 2017) (review denied Sept. 12, 2017).

¶4            Green Cross filed a complaint against Gally, as Trustee of the Trust, for breach of contract and motions for a temporary restraining order ("TRO") and preliminary injunction.  Gally argued he was required to revoke the lease because a prior month-to-month lessee—a sister company to Compassionate Care Dispensary ("CCD"), which also wanted to operate a medical marijuana dispensary on the Property—allegedly had a superior interest in the form of an option to purchase the Property.[2]  The superior court issued the TRO and later the preliminary injunction, barring Gally and the Trust from revoking the lease and taking possession of the Property pending final determination of the action.  Gally did not restore Green Cross's possession of the Property, however, and in July 2012, he appealed the preliminary injunction.

¶5            Green Cross had applied with ADHS to be awarded the single Winslow dispensary license, but given its limited funds and the uncertainty over the lease's status, Green Cross instructed ADHS to assign its sole $150,000 "proof of deposit" to the Kingman dispensary lottery—a lottery with more contestants and a significantly smaller chance of winning—instead of the Winslow lottery.

¶6            In August 2012, the ADHS dispensary bingo-ball lottery drawings took place.  TMR won the Winslow dispensary lottery over CCD. Green Cross did not win the Kingman dispensary lottery.

¶7            In September 2013, this court affirmed the preliminary injunction in favor of Green Cross.  *See Green Cross I*, 1 CA–CV 12–0610, at *3, ¶¶ 13, 15.

¶8            On remand, the superior court granted Ward's motion to withdraw as counsel for Gally and the Trust, and the parties cross-moved for summary judgment. Green Cross sought partial summary judgment on liability for possible damages for the lease revocation; Gally and the Trust argued the lease was illegal and therefore unenforceable under the Arizona Medical Marijuana Act ("AMMA"), *see* Ariz. Rev. Stat. ("A.R.S.") §§ 36–2801 to –2822, and the federal Controlled Substances Act, *see* 21 U.S.C. §§ 801 to 904.  The superior court denied Green Cross's motion and granted Gally and the Trust's motion, holding the lease violated both state and federal law and was therefore void for illegality.

---

[2] Ward, the attorney for Gally and the Trust, was stepmother of a principal/owner of CCD.

¶9          Green Cross appealed, and this court held the lease was not void, either for being contrary to the AMMA or for being contrary to the Controlled Substances Act, and "was enforceable at least for purposes of a damages action for its breach." *Green Cross II*, 242 Ariz. at 298, 300-01, ¶¶ 15, 25, 29. We reversed and remanded for consideration of Green Cross's damages claim. *Id.* at 300-01, ¶¶ 25, 30

¶10         In May 2018, Gally and the Trust filed their answer, denying Ward ever acted as their agent and positing she had "used" them "as an unwitting tool" to further her family's interests. They later moved for summary judgment, arguing Green Cross could not show damages from breach of the lease because Green Cross's lottery ball would likely have replaced CCD's losing lottery ball in the Winslow drawing. Green Cross responded that even had its application "replaced" CCD's, the lottery ball assignment was not guaranteed to be identical because ADHS randomized their assignment to qualified dispensary applicants via a computer program before the lottery. Thus, it was not a foregone conclusion Green Cross would have been assigned the same lottery ball as CCD. Green Cross also noted the Trust's argument assumed CCD would not have been included in the Winslow lottery absent the breach, despite what it termed a "likelihood" it would have been. Finally, Green Cross argued the Trust's argument ignored the opinions of the parties' experts, both of whom had employed—at least in part—an *ex-ante* framework in calculating or critiquing lost profit damages. This approach considered only information known or knowable on the date of the breach and excluded subsequent events, such as the lottery drawing, from the calculation. After oral argument, at which the Trust's attorney "agreed that either Ball 'A' or Ball 'B' could have been assigned to [Green Cross]," the court denied the motion.

¶11         The superior court also denied the Trust's subsequent motion to exclude Green Cross's claimed lost profits damages as speculative. In 2021, Gally passed away, and his daughter, Mangisi, replaced him as Trustee.

¶12         In February 2022, the superior court conducted a two-day bench trial on the damages issue. The court heard testimony from William Brothers, Green Cross's founder and principal owner; Mangisi; Dwight Duncan, CFA, Green Cross's expert witness on damages; and Timothy Tribe, CPA/CFF, CFE, CICA, the Trust's expert witness on damages.

¶13         In July 2022, the superior court issued a ruling supported by findings of fact and conclusions of law—as requested by the Trust—

awarding damages in favor of Green Cross and against the Trust for $3,565,000. The court later entered judgment under Rule 54(c), Ariz. R. Civ. P., in favor of Green Cross and against the Trust, awarding the above damages, $95,024.87 in attorneys' fees, and $49,866.25 in expert witness fees, along with accruing interest. The court denied the Trust's motion for a partial new trial,[3] and we have jurisdiction over the Trust's timely appeal under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.     The Trust's Opening Brief

**¶14**          Green Cross argues that portions of the Trust's opening brief do not comply with Rule 13, ARCAP, because the Trust makes numerous "uncited, and incorrect factual assertions" and engages in "editorializing amounting to argument" in its introduction and statement of the case. *See* ARCAP 13(a)(3)-(4). We agree with Green Cross's characterization of the Trust's brief but decline to reject the Trust's appeal on this basis, *see Clemens v. Clark*, 101 Ariz. 413, 414 (1966); *Lederman v. Phelps Dodge Corp.*, 19 Ariz. App. 107, 108 (1973), and we rely on our record review for the necessary facts, *see Sholes v. Fernando*, 228 Ariz. 455, 457, ¶ 2 n.2 (App. 2011); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 257 n.1 (App. 1998).

### II.     Causation

**¶15**          The Trust argues Green Cross's exclusion from the Winslow lottery and its subsequent lost expectancy damages were not caused by its breach of the lease but by subsequent independent acts of others—including Ward and her family's business interests, including CCD, and Green Cross itself. In its opening brief, however, the Trust abandons any argument concerning anyone except Ward, who the Trust characterizes as having a "blatant conflict of interest." The Trust concedes, as it must, that an agency relationship existed between it and Ward but argues the court erred in failing to recognize she was not only the attorney for Gally and the Trust, but also the attorney for her family's entities, including CCD.

---

[3] The motion alleged Green Cross had improperly withheld disclosure regarding Mr. Duncan. In its reply, the Trust abandoned that argument and argued Green Cross's expert witness testimony on damages was inadmissible. After finding the Trust had filed "no motions, either before or during trial, arguing [Green Cross's] expert's opinion on calculation of damages should be excluded—except an argument it was speculative," the court denied the motion.

¶16          We review findings of fact for clear error and conclusions of law *de novo*. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). A superior court's findings of fact are binding on this court if supported by credible evidence, and our inquiry is whether the court had before it evidence reasonably supporting its action viewed in the light most favorable to sustaining the findings; we will not reweigh conflicting evidence on appeal. *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 72 (App. 1986).

¶17          The Trust acknowledges that "[g]enerally, whether agency exists is a question of fact" but argues that "when the material facts are not in dispute, the existence of such a relationship is a question of law for the court to decide." *Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 239 Ariz. 126, 129, ¶ 6 (App. 2016) (citations omitted). Here, however, the argument is unavailing, as the Trust seeks to characterize factual disputes as legal ones, to introduce numerous contested "additional facts developed at trial," and to make other factual assertions that in some cases are simply arguments couched as "facts" not accepted by the superior court.

¶18          The record contradicts the Trust's attempt to paint itself as an innocent victim. Gally was an experienced landlord and his previously sworn testimony before the superior court was "intentionally very evasive on cross-examination" due to his economic interests. *See Green Cross I*, 1 CA–CV 12–0610, at *2, ¶ 11. The record is clear that, after entering the lease with Green Cross, Gally revoked it without cause and did so through his attorney, Ward, who was acting in her capacity representing Gally and the Trust. Then, one day before the TRO hearing, the Trust, through Gally, signed an affidavit—later submitted to ADHS—declaring the Trust was selling the Property to Ward's company, Western Surety, and that the only entity with rights to the Property was CCD, the company owned by Ward's stepson. The affidavit noted that permission for any other applicant— Green Cross—"has been withdrawn."

¶19          On June 28, 2012, the sale of the Property to Western Surety closed. Purportedly, the sale was for $225,000, of which $220,000 was carried as a loan from the Trust to Western Surety. Despite the sale being subject to the rights of Green Cross under the lease, Western Surety notified ADHS on July 18 that Green Cross lacked "landlord permission" to operate a dispensary on the Property. That same day, ADHS notified Green Cross its Winslow application was incomplete, partly because it did not have a Documentation of Property Ownership form signed by Western Surety.

¶20        Although the Trust suggests its liability ended with the sale to Western Surety,[4] Gally knew Green Cross and CCD intended to operate medical marijuana dispensaries on the Property and knew of Ward's connections to CCD.  It was foreseeable and predictable that Ward would seek to oust Green Cross from the Property and use it for CCD, and Gally helped achieve this result by selling the Property to a sister company of CCD and signing documentation declaring that only CCD had the right to use the Property as a dispensary.  At no time before the lottery drawing did Gally or the Trust disavow Ward as their agent, advise Green Cross they had told her to "stand down," or claim her interests were in any way at odds with theirs.  Further, Ward continued to represent them until April 2014, about twenty months after the lottery drawing and seven months after this court affirmed the superior court's preliminary injunction.  A reasonable trier of fact could infer Gally and the Trust were not taken advantage of by Ward or CCD, as they claim, but were cooperating with them.  And the superior court found, "In the end, it was the specific actions of the Trust and of it[s] attorney while acting for the Trust . . . that resulted in ADHS's rejection of [Green Cross's] application in Winslow."  Gally and the Trust's acts prevented Green Cross from participating in the August 2012 Winslow dispensary lottery and directly caused Green Cross's lost expectancy damages.

III.    Effect of the Actual Lottery Result

¶21        At trial, Green Cross argued that breach of the lease caused both the improper inclusion of CCD in the Winslow lottery and its exclusion from the Winslow lottery.  Couching its argument as a legal argument, the Trust argues that, as a matter of law, Green Cross cannot recover "uncertain result" damages for a hypothetical two-ball drawing involving Green Cross and TMR, because a two-ball drawing involving CCD and TMR occurred, and the result is known—TMR won.  The Trust maintains the only effect of the breach is "that CCD's application number, rather than Green Cross's application number, was associated on a spreadsheet with the ultimately *losing* ping-pong ball."[5]

---

[4] The Trust later retrieved the Property through foreclosure after Western Surety failed to pay the mortgage.

[5] We disagree with Green Cross that the issue was not preserved for appeal. The issue was raised before trial in the Trust's motion for summary judgment, in the Joint Pretrial Statement, and in the Trust's post-trial Proposed Findings of Fact and Conclusions of Law.

¶22            Whether the superior court applied the correct measure of damages is a mixed question of fact and law, which we review *de novo*. *SDR Assocs. v. ARG Enters.*, 170 Ariz. 1, 2 (App. 1991).  Although a damages expert may explain the factors they relied on and the methodology they used as an adjunct to the factfinder, the superior court should not determine an applicable legal standard through expert testimony. *See generally Ryan v. Napier*, 245 Ariz. 54, 66, ¶¶ 51-52 (2018).  The Trust, however, fails to support its legal argument by citing any Arizona authority precluding the methodology used by Green Cross's damages expert, Mr. Duncan, and adopted by the superior court, and we are aware of none.

¶23            "[D]amages are measured as of the date of the breach." *SDR*, 170 Ariz. at 3 (citation omitted).  "If a breach is of a promise conditioned on a fortuitous event and it is uncertain whether the event would have occurred had there been no breach, the injured party may recover damages based on the value of the conditional right at the time of breach." Restatement (Second) of Contracts § 348(3) (1981).

¶24            Here, ADHS randomized not only the ultimate selection of lottery winners but also the assignment of the lottery balls to qualified dispensary applicants in each CHAA via a computer program before the lottery.  Thus, the lottery was not guaranteed to be identical, and it was not a foregone conclusion that Green Cross would have been assigned the same lottery ball as CCD.  Accordingly, the superior court correctly found Green Cross could have been assigned the winning ball had it participated in the Winslow lottery.

¶25            Furthermore, the Trust's "losing lottery ball" argument ignores the opinion reports and testimony of both parties' experts, who agreed on the appropriate damages methodology to be applied in a case such as this, which involves a lost opportunity.  Mr. Duncan presented an *ex ante* damages analysis as of the date of the breach based on what was known or knowable at the time.  Under an *ex ante* analysis, as Mr. Duncan testified, the relevant information is "only what was known or knowable as of the date of the bad act."  Thus, even a stolen losing lottery ticket is still worth its expectation value—the probability of winning at the time of the theft times the jackpot amount.  The Trust's expert, Mr. Tribe, agreed with Mr. Duncan that an *ex ante* approach is a "commonly accepted" methodology for determining damages that is "widely accepted in various

courts"[6] and that a probability adjustment is an appropriate way to calculate damages in this case.

¶26        The Trust's "losing lottery ball" argument is not supported by applicable law, is inconsistent with how the dispensary certificate lottery was conducted, is not supported by trial testimony, and contradicts its own expert's admissions.

IV.        "Speculative" Lost Profits

¶27        The Trust argues Green Cross did not demonstrate its claimed lost profits with "reasonable certainty."  We disagree.

¶28        We will not set aside findings of fact unless they are clearly erroneous, and we give due regard to the superior court's opportunity to judge the credibility of witnesses.  Ariz. R. Civ. P. 52(a)(6).  When it aids in understanding evidence or determining a fact in issue, a party may generally present testimony by a qualified expert witness.  *See* Ariz. R. Evid. 702.  If substantial evidence supports a finding of fact, that finding is not clearly erroneous, even if conflicting evidence exists.  *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51-52, ¶ 11 (App. 2009).  We do not reweigh the evidence or substitute our evaluation of the facts, but review *de novo* the superior court's legal conclusions.  *See id.* at 52, ¶¶ 11-12; *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, 86, ¶ 12 (App. 2006).  The legal sufficiency of evidence is a question of law we review *de novo*.  *See McBride v. Kieckhefer Assocs.*, 228 Ariz. 262, 265, ¶ 10 (App. 2011).

¶29        To recover damages for lost profits, Green Cross had to prove (1) "[t]hat it is reasonably probable that the profits would have been earned except for the breach," (2) "[t]hat the loss of profits is the direct and natural consequence of the breach," and (3) that "[t]he amount of lost profits can be shown with reasonable certainty."  RAJI (Civil) 7th Contract 19.  "If future lost profits are reasonably certain, any reasonable basis for determining the amount of the probable profits lost is acceptable.  However, the amount of lost profits cannot be based on conjecture or speculation."  *Id.*  "[D]oubts as to the extent of the injury should be resolved in favor of the innocent plaintiff and against the wrongdoer."  *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963).  Moreover, "[o]nce the fact of lost profits is established . . . our courts have not been as strict about the amount."  *Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 164, ¶ 47 (App. 2007); *see also Earle M. Jorgensen Co. v. Tesmer*

---

[6] *See SDR*, 170 Ariz. at 3; *Shah v. Skillz Inc.*, 320 Cal. Rptr. 3d 175, 196-97 (Cal. Ct. App. 2024); *Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001).

*Mfg. Co.*, 10 Ariz. App. 445, 450 (1969) (citing cases).  Thus, disputes over "the evidence used to establish the amount of damages will go to the 'weight of the evidence.'"  *Felder*, 215 Ariz. at 164, ¶ 47 (citations omitted).

¶30        A new business is not precluded from recovering an award for lost future profits.  *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 183-84 (App. 1984).  "The evidence required to prove loss of future profits depends on the individual circumstances of each case . . . ."  *Id.* at 184.  But the proponent must establish a "reasonable basis in the evidence for the trier of fact."  *Id.*

¶31        Our review confirms that substantial evidence supports the superior court's lost profits damages award.  The Trust's assertions that Green Cross lacked plans, experience, and financing are contradicted by the record.  The court's findings of fact and conclusions of law discuss Green Cross's business plans, the experience of its principals, and its access to cash, citing the record.

¶32        As to the expert testimony, the superior court found that "Mr. Duncan reviewed pleadings, interviewed [Green Cross's] principal, Bill Brothers (placing his notes into his file), industry texts, scholarly articles, qualified patient information within CHAA designations, trends from mature markets in California and Colorado, medical marijuana published data including studies of marijuana crop yields, and NAICS codes for industry risk, among other data sources."  The court also found, "Relying on his experience and research, Mr. Duncan evaluated service areas, observed distances customers drive in other markets, calculated qualified patients as percentage of population, deduced average spend by patients and product pricing, summarized operating expense ratios, and performed risk adjustments, including company specific risk adjustments."  The record supports the court's findings.

¶33        Additionally, Mr. Tribe endorsed Mr. Duncan's principles and methods and testified about the information and data that would produce reliable expert testimony in determining Green Cross's damages.  These included publications of technical, financial and industry data; interviews with management; the expert's own experience specific to the business and the industry; and examination of mature markets like California and Colorado, including consumption or usage data and pricing data—the very things Mr. Duncan relied on in forming his opinions.

¶34        Also, in performing his work, Mr. Duncan determined a discount rate he applied to his damages calculation—a rate meant to factor

in various risks, including industry risks and company-specific risks.  Mr. Tribe made no changes to Mr. Duncan's proposed discount rate, while indicating he thought it was unnecessary.  Within the damages framework accepted by both parties, Green Cross presented substantial evidence, mostly without any rebuttal from Mr. Tribe or the Trust.  On this record, Green Cross presented substantial evidence to prove its claimed lost profits with "reasonable certainty."[7]

## V.  Failure to Subtract Management Fees From "Profits"

¶35  The Trust argues the superior court erred in awarding lost profits damages to Green Cross because Mr. Duncan admitted "essentially all" profits would have been paid as management expenses and thus "agreed" that such expenses should not be awarded as damages.  We discern no error.

¶36  The AMMA requires registered medical marijuana dispensaries to be non-profit entities.  *See AOW Mgmt. LLC v. Scythian Sols. LLC*, 1 CA-CV 20-0699, 2022 WL 2813523, at *3, ¶ 16 (Ariz. App. July 19, 2022) (mem. decision) (citing A.R.S. § 36-2806).  ADHS required certificate applicants to submit proposed bylaws (including, *inter alia*, provisions for operating the dispensary on a non-profit basis) and a proposed business plan reflecting revenues not exceeding expenditures.

¶37  That said, a non-profit medical marijuana dispensary can be a lucrative enterprise, but as a non-profit, it is distinguished from a for-profit business corporation "primarily by the absence of stock or other indicia of ownership that give their owners a simultaneous share in both profits and control."  *Id.* at ¶ 14 (citation omitted).  Receipts or profits greater than operating expenses and applicable costs must be reinvested back into the non-profit or donated to other charitable causes.  *Id.* at ¶ 17.

¶38  The Trust's argument appears to be based on conjecture about how Green Cross would use and distribute its excess receipts or "profits."  The Trust asserts Mr. Duncan "admitted" that profits for a non-profit

---

[7] In denying the Trust's pretrial motion to exclude Green Cross's claimed lost profits damages as speculative, the superior court advised, "If, after [Green Cross] has been fully heard on the issue of lost profit damages, the evidence is such that a reasonable jury could not have a legally sufficient evidentiary basis to find lost profit damages, then [the Trust] can make a Rule 50 motion for judgment as a matter of law."  The record does not indicate the Trust made such a motion.

Arizona medical marijuana dispensary are normally paid out as management expenses to a management company—and thus cannot be counted as profit. However, although Mr. Duncan testified that he was aware of business models in which non-profits paid "essentially all the profits" to a separate management company, he also made clear he was not necessarily speaking about Green Cross, and he was aware of other business models. Mr. Tribe, the Trust's expert, testified that a profits calculation for a non-profit would be "functionally" the same as for any other entity. And Mr. Duncan's damages calculation factored in expected revenues and deducted both the cost of goods sold and operating expenses. The remainder counted as "profit," which the court awarded in this case. The Trust's argument does not challenge Mr. Duncan's methodology or Mr. Tribe's testimony.

¶39    Further, although the Trust concedes non-profit entities can prove lost profits, its argument suggests any profits should not inure to Green Cross, a non-profit corporation. But when asked about this at trial, counsel for the Trust conceded it was not "fair game to breach non-profit contracts" and disputed any claim that Green Cross should be denied lost profits damages because it is a non-profit corporation. Although non-profits are limited as to how they may pay a separate management company or allocate distributions, they may still create "profits."

VI.    Attorneys' Fees and Costs on Appeal

¶40    Both sides request costs and attorneys' fees on appeal under A.R.S. § 12-341.01. The Trust is not the successful party, and we deny its request. Green Cross is the successful party, and we grant its request for taxable costs and attorneys' fees in an amount to be determined upon compliance with ARCAP 21.

**CONCLUSION**

¶41    The superior court's judgment is affirmed.

